CHARLES E. BROWN

*v.*

HELENA SMITH.

83  291
40a 520
83  291
51a 469
83    291
100a ²388

1. MALICIOUS PROSECUTION—*evidence of matter arising after prosecution.* Where a wife, after a decree of divorce against her, continued to occupy an apartment in her husband's house, without his consent, and brought her sisters to stay with her, and he, after notifying them to leave, in their absence, locked the doors and fastened up the windows, and, on their return, the wife broke the windows, and thus forced an entrance for herself and sisters, the latter standing by, and one of them concealing the instrument used, and the husband, on the advice of counsel, had them all arrested for malicious mischief, and, on the trial of an action brought by one of the sisters for malicious prosecution, the court admitted in evidence the petition of the wife for alimony, filed after the divorce and after the criminal prosecution, for the purpose of showing that she claimed an interest in the house: *Held,* that the court erred in admitting the same.

2. SAME—*strict rules of evidence should be enforced.* On the trial of an action for malicious prosecution, the strict rules of evidence should be enforced by the court, and evidence of facts foreign from the inquiry should be excluded.

3. SAME—*want of probable cause.* Want of probable cause, though negative in its character, must be proved by the plaintiff by affirmative evidence. It can not be inferred from any degree of malice which may be proved. It is a mixed question of law and fact.

4. SAME—*advice of counsel.* A party seeking the advice of counsel as to commencing a criminal prosecution must act in good faith and without gross negligence, and not withhold any information with an intent to procure an opinion that might operate to shelter and protect him against a suit. If a party culpably or negligently withholds from counsel any material fact, the advice will not protect him. Per BREESE, J.

5. But where the counsel advised with is already conversant with a material fact, by being an attorney of the party in a prior suit, it will not be necessary for the party to give him information of it. He may, in such case, presume the counsel has knowledge as to such fact, without being chargeable with bad faith. Per BREESE, J.

6. TENANTS BY SUFFERANCE—*who are.* Tenants *per autre vie* after the death of the *cestui que vie,* tenants for years whose terms have expired, tenants at will whose estates have been determined by alienation or by the death of the lessor, under-tenants holding over after the expiration of the original lease, and a grantor who agrees to deliver possession by a particular day and holds over, are tenants at sufferance. Per BREESE, J.

7. WIFE—*rights of, cease on divorce.* During the pendency of a bill by a husband for a divorce, the wife will have the right to remain in an apartment of his house in virtue, alone, of the marriage relation, but, after decree of divorce, her rights to any and all parts of it will cease, and if she continues to remain, against the will of the husband, she will be a mere intruder, and is not a tenant at sufferance, and is not entitled to notice to quit. Per BREESE, J.

8. CRIMINAL LAW—*when party is liable for act of another.* In case of a combination to do an unlawful act, the act of one is the act of all, when they are present, whether they participate in it or not. Per BREESE, J.

9. POSSESSION—*right to take, peaceably.* Where a party is a mere intruder upon the possession of another, the latter will have the right to repossess himself peaceably if he can, and take measures to keep the intruder from re-entering. Per BREESE, J.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. MERRIAM & ALEXANDER, for the appellant.

Mr. C. M. HARDY, and Messrs. MAGEE, OLESON & ADKINSON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was *case,* in the Superior Court of Cook county, by Helena Smith, plaintiff, and against Charles E. Brown, defendant, to recover damages for an alleged malicious prosecution.

The parties went to trial on the general issue, and there was a verdict for the plaintiff for three hundred dollars, for which, on denying a motion for a new trial, the court rendered judgment, to reverse which the defendant appeals, assigning various errors.

Several points are made by appellant, going, principally, to the evidence in the cause, which we will not discuss, but consider the case with reference to the ruling of the court in admitting as evidence, against the objection of appellant, the petition of Mrs. Brown for alimony, presented some time after the decree of divorce, and some time, a month or more, after the alleged malicious prosecution, and some instructions to which exceptions were taken.

Appellee contends, inasmuch as the divorce decree had been introduced in evidence, the introduction of a petition for alimony, made long afterwards, and after the proceedings for the forcible entry, was proper, in order to show that the petitioner had a claim to an interest in the property. This, we conceive, was a matter foreign to the investigation then pending. The object was, doubtless, to inspire a belief that Mrs. Brown had an interest in the premises wholly distinct and independent of the license given her by appellant to remain there while the divorce suit was pending. If the jury could get hold of a pretense of this kind, it is obvious it could have no other than a very prejudicial effect upon appellant. We all know how apt juries are to incline favorably to the claims of a woman—often upon the slightest pretenses. Courts, therefore, should be very careful to exclude from them the consideration of facts not strictly belonging to the case, and which, if admitted, may furnish them an apology for an unjust finding. There are many obvious reasons why, in actions for malicious prosecution, the rules of evidence should be rigidly enforced by the courts. But, if the petition of Mrs. Brown was evidence, why was not appellant's answer to it also evidence? This was excluded. If the one was legitimate evidence in this controversy, surely the other was. As the case stands, it does not appear that the rules of law have been properly applied. We are of opinion the petition should not have been admitted.

Instructions eight and nine are excepted to. They submit the question of probable cause as a fact for the jury. Want of probable cause, though negative in its character, must be proved by the plaintiff by some affirmative evidence. It is independent of malicious motive, and can not be inferred as a necessary consequence from any degree of malice which may be proved. The question of probable cause is made up of law and fact, it being the province of the jury to determine the circumstances alleged, to be true or not, and of the court to determine whether they amount to probable cause. 1 Greenlf. on Ev. 406. And so it was held by this court in *Israel* v. *Brooks*, 23 Ill. 575, referring to *Jack* v. *Simpson*, 13 ib. 703;

and in a late case decided by the Court of Appeals of New York (*Faynan* v. *Knox*) it was distinctly said: "The question of probable cause is one of law, and not of fact." So decided at September term, 1876.

We think the ruling of the court by which Mrs. Brown's petition for alimony was admitted in evidence, in which she claimed an interest in these premises in her own right, was well calculated to prejudice the jury against appellant. It had nothing to do with the matter then in controversy, and should have been excluded.

It was error, also, in submitting the question of probable cause to the jury as a question of fact.

For these errors the judgment is reversed and the cause remanded.

*Judgment reversed.*

Separate opinion of Mr. JUSTICE BREESE:

Whilst concurring with the majority of the court in the above opinion, I go further, and hold several of the instructions given for plaintiff should have been refused, and one asked by the defendant should have been given.

The leading facts are, that appellant, on the 16th of April, 1872, had obtained, by a decree of the proper court of Cook county, a divorce from his wife, on charges made against her. Whilst the proceedings for divorce were pending, appellant had permitted his wife to occupy one or two rooms in the house, he occupying another portion of the house, and having no communication with her. Two days after the divorce, on April 18, 1872, Mrs. Brown invited her sister, the appellee, to come to the house and stay with her, there being another sister there also, a Miss Hanson. It would appear appellant was not satisfied with their presence, and, on consulting an attorney, he gave Mrs. Brown a notice to quit, and expressed to all of them—more than once to all of them—that they should quit, as their presence was a great annoyance to him. They refused to quit, when appellant applied to Mr. Law, a practicing attorney, for advice in the premises, and, acting on his advice,

when these parties were out of the house, he locked up the doors, and barred the windows by nailing boards and slats across them to prevent entry in that direction. This was ineffectual, for Mrs. Brown, with a hatchet,—appellee and Miss Hanson being present,—ripped off the slats and boards, pried up the window, and, through that opening so made, obtained entrance into the house for herself and her sisters. This was on May 13, 1872—less than one month after the divorce had been granted.

Appellant, disappointed in the result of the advice given by Mr. Law, took his grievances to John Mason, Esq., proved to be a lawyer eminent in his profession, and who had been his counsel in the divorce proceedings. Appellant stated to Mr. Mason the leading facts, and, paying him a fee of twenty dollars, was furnished with his advice.

Mr. Mason undertook the task of dislodging these people, and advised appellant again to lock them out and bar their entrace, and, on June 1, thereafter, these people being again out of the house, appellant again barred them out by nailing down the windows and locking the doors. About six o'clock in the afternoon of that day, Miss Hanson came to the house, then appellee, Mrs. Smith, came, and a little later came Mrs. Brown, all of whom had been out at work during the day, and finding the doors locked, and the windows fastened, and being refused entrance by appellant, who was there, it being his place of residence, who directed them to go away, Mrs. Brown commenced an assault upon one of the windows with a piece of iron, got the window out, breaking one or more lights of glass in the effort, crawled through the window into the house, followed soon after by her sister, Miss Hanson. During all the time these things were being done, appellee and her sister, Miss Hanson, were sitting on a bench about ten or twelve feet in front of the window, occasionally walking back and forth. Mrs. Brown, with the instrument she had, aimed a blow at appellant's head, which he warded off by his arm, receiving thereby a wound from which blood freely flowed. In attempting to find out what kind of an instrument it was by which the

blow was inflicted, Mrs. Brown passed it into the hands of appellee, who " stuck " it between her legs.

This was Saturday evening. On the Monday following, appellant went again to Mr. Mason, his lawyer, in company with his son-in-law, a Mr. Dedrickson, and related to Mason what had occurred; that his divorced wife had broken in again; that the sisters were present, and appellee had secreted the instrument used to prize up the window, and they followed her through the window. Mr. Mason said the women ought to be arrested, and wrote out a paper which he gave to appellant, telling him to carry it to the police court. This was done, and the police magistrate gave him another paper, directing him to take it to the West Chicago Avenue Station. This was in the forenoon of Monday.

The officer failed to serve the warrant until about six o'clock in the afternoon, when he arrested them, took them to the station, where they were detained in a cell until about 11 o'clock, when their attorney appeared and entered bail for their appearance before the magistrate. The magistrate heard the case, and recognized them to appear before the circuit court, to answer such charge as the grand jury might prefer against them. The grand jury ignored the bill, whereupon this suit was commenced by Mrs. Smith, resulting as above stated.

It would appear, the writing given by Lawyer Mason to appellant, to take to the police magistrate, was a complaint against these parties for malicious mischief. Appellant signed and made oath to this complaint, and it was for that offense appellee was arrested. Appellant, it would appear, is an ignorant man, and was governed in what he did entirely by the advice and direction of his counsel, and acted in good faith towards him, intentionally concealing nothing.

These being the prominent facts, the court, in the first instruction to the jury on behalf of the plaintiff, stated that the consent given by appellant to his wife to occupy certain apartments in the house during the pendency of the suit for a divorce, constituted her, after that suit was determined against her, a tenant by sufferance, and, as such, she had a right to occupy

until turned out by due process of law, and defendant had no right to enter her premises when she was temporarily absent, and bar her out.

The examples of tenancy by sufferance, given by elementary writers, are, tenants *per autre vie* after the death of the *cestui que vie*; tenants for years, whose terms have expired; tenants at will, whose estates have been determined by alienation, or the death of the lessor; under tenants, holding over after the expiration of the original lease; and a grantor who agrees to deliver possession by a certain day, and holds over. 1 Washburn on Real Property, 524.

It will be readily seen that the occupancy of Mrs. Brown of rooms in the house during the pendency of the divorce proceedings, can not be arranged under either of these definitions. As the wife of appellant, she had undoubtedly a right to use all the apartments in the house in virtue alone of marriage relation. When that ceased by the decree of the court, her rights to any and all portions of the house ceased, and had she possessed the least delicacy of feeling, or ordinary sensibility, she would at once have left the premises, without waiting a notice so to do. After the divorce, her rights terminated, and it was contrary to all propriety on her part, to invite her sisters, after that, this plaintiff being one of them, to come and remain there. She herself having no right to be there, could confer no right upon them. She was not a tenant on sufferance, but an intruder from and after April 16, 1872, the day the divorce was granted.

The second instruction is objectionable for the same reason, and for the additional reason that it asks the jury to say, if there was not a tenancy by sufferance.

Mrs. Smith, the plaintiff in this action, came to this house on the invitation of the divorced wife after the divorce, namely, on April 18. Appellant objected to her remaining there. She had not a particle of right to be there, using appellant's house as a shelter and a home, and had she possessed proper feminine feelings, she would have left when required to do so, by

appellant.   We do not think she had the rights accorded to her in this instruction.

On the true theory of this case, the third instruction was wrong, for the law is well settled, if there be a combination charged of more persons than one to do an unlawful act, the act of one is the act of all, and it was wholly immaterial whether appellee actually broke the glass or not, or did any other forcible or violent act, if she was of the combination, and present at the time the acts were done, and in this case it is proved she attempted to conceal the instrument with which Mrs. Brown did the act.

The fifth instruction is as follows:

" 5.   If the jury shall believe, from the evidence, that John Mason advised the arrest of Mrs. Smith, and that Brown caused her arrest in pursuance of such instructions, still such advice does not protect him, unless he laid all the facts before Mason.   It was Brown's duty to suppress nothing from Mason which might have influenced a lawyer, or might have led him to give different advice.   And if the jury shall believe, from all the evidence in the case, that Brown did not give Mason full and correct particulars of the alleged offense, and of the situation of the parties as to their occupancy of the house, then it is of no consequence what Mason advised; his advice affords no protection to Brown."

I think the rule is here announced too broadly.   It is required, the party seeking the advice of counsel shall act in good faith and without gross negligence, and if he does not withhold any information from his counsel, with the intent to procure an opinion that might operate to shelter and protect him against a suit, he ought to be secure.   This is the substance of the rule in *Ross* v. *Innis*, 35 Ill. 487.   If a party culpably or negligently withholds from counsel any material fact, the advice given should not protect him.   It was a fair question for the jury, did appellant act in good faith with his counsel?   Did he culpably or negligently withhold from him a knowledge of important facts, with the intent to use his

opinion to protect himself against an action? If the counsel mistake the law when in possession of all the important facts, the consequences ought not to be visited on his client, by subjecting him to an action for pursuing the course his counsel advised. 1 Greenleaf on Ev. pp. 414, 415, and notes, (Redfield's ed.)

The counsel with whom appellant advised was his counsel in the divorce suit, and appellant might well suppose the counsel knew the precise relations as to occupancy existing between appellant and his wife, and, therefore, said nothing about it. There can be no pretense of want of good faith and entire honesty in appellant's communications to his counsel.

I am inclined to think, on the true theory of this cause, the following instruction, asked by defendant, should have been given, as there is evidence on which to base it:

" 7. If the jury believe, from the evidence, that at the time of the arrest, and for many months prior thereto, the plaintiff and her sisters, one of them the divorced wife of the defendant, had wilfully persisted in occupying the house without defendant's consent, and that the plaintiff originally entered the house and took up her abode therein without leave, license or acquiescence on the part of the defendant, then the plaintiff was a trespasser upon defendant's property, and the jury are instructed that defendant had a right to bar her ingress to the building. And if the jury also believe, from the evidence, that, being thus barred out, the plaintiff assisted or encouraged her sister or sisters in making forcible entrance into said building, and that in so doing a window of the house was wilfully broken, all such circumstances may be taken into the consideration of the jury in determining the question of malice and want of probable cause in the defendant."

This woman was an intruder upon appellant's premises, whose presence annoyed him, and whom he had requested to leave, but she obstinately refused. I think he had a clear right, when she was absent from the premises, to bar her ingress, peaceably if he could. That he did do so peaceably, is

proved. He had a right to board up the windows of his house, and lock the doors as against appellee.

I have read a case lately, decided by the House of Lords, *Lows* v. *Telford and Westray,* 1 Appeal Cases, 414, which has some bearing on this case, and is to this effect: The mortgagor of certain premises mortgaged the same in fee. The mortgagee not having taken actual possession, the mortgagor made an agreement with A and B to allow them, at a rent, the use of the premises, and A and B, for a short time, used them, and deposited goods there. One morning, at an early hour, the mortgagee in fee, without notice, took possession by taking off the lock of the outer door. A and B, who were not on the premises at the time, thereupon tried to eject him. They were unable to get in at the door, but obtained entrance at the side window, and did eject the mortgagee from the premises. The mortgagee indicted them for forcible entry. They were acquitted, paid their attorney's bill, and brought their joint action against the mortgagee for a malicious prosecution, without reasonable and probable cause.

A verdict was taken for the plaintiffs, with leave to the mortgagee (defendant) to move to enter a judgment for him. The Court of Exchequer ordered the verdict to be entered for the defendant, which judgment the Exchequer Chamber reversed, and on appeal to the House of Lords it was held, (CAIRNS, Lord Chan., Lord HATHERLEY and Lord SELBORNE concurring,) that there was reasonable and probable cause for the indictment. The possession which A and B previously had, was put an end to by the proceedings of the mortgagee on the day when he entered. From that possession he had been dislodged by forcible entry. There was, therefore, a reasonable and probable cause for preferring the indictment. A and B were not entitled to notice to quit, and the mortgagee having the legal estate, could treat them as trespassers or wrongdoers—that they were there at the mere will of the mortgagee.

These rights were accorded to the mortgagee because he was possessed of the legal title. Here, appellant held the legal title, appellee coming in under Mrs. Brown, who was a mere

tenant at will of appellant, and not entitled to notice to quit. *Dunne* v. *Trustees of Schools*, 39 Ill. 578.

As in the case *supra*, appellee was not in the actual occupancy of any part of the house, by her bodily presence, nor were the other tenants at will. As to that, the premises were vacant, and instead of taking off the lock of the outer door, as in the case cited, appellant locked the door on the inside, and barred the windows. Appellee and her confederates, as in the case cited, obtained entrance at the window, and thus ejected appellant from that part of the premises. Appellant did not indict them for forcible entry, but, at the instance and advice of learned counsel, made a complaint against them for malicious mischief, and this is the difference in the cases. If there was reasonable and probable cause for the indictment in the one case, as held by the House of Lords, it is difficult to see why there was not such cause for the complaint made in this cause by appellant. It was held in *Dean* v. *Comstock*, 32 Ill. 173, that the owner of the legal title might take possession, without a breach of the peace, of property which his grantor had previously bargained to another, and whose vendee had put a tenant in possession, who had afterwards deserted them. A party holding the legal title may peaceably enter, when there is no person in actual possession.

I am inclined to hold there was probable cause for the prosecution. The goods of appellee being in the house when she was barred out, can have no more weight than did the goods of A and B, which were then in the building when the mortgagee took possession, and was ejected as in the case cited.

It is said by appellee, this case is almost precisely like the case of *Chapman* v. *Carney*, 50 Ill. 572. In some respects there is a likeness, but in that case the tenant was entitled to notice to quit, which he had never received, and the charge made against him, which gave rise to the action for malicious prosecution, was a burglarious entry, with intent to kill. He was seized on Saturday, and confined in jail until Monday, and all opportunity denied him to procure bail. The case was full of malice, and no probable cause shown.

On a careful examination of this record, I am of opinion justice has not been done appellant on the merits. What can an ignorant man rely upon, in cases of this kind, if not on the opinion of an eminent lawyer? He was told by appellant what he wanted, and that was, to get these parties out of his house. He did not tell his lawyer Mrs. Brown was permitted to occupy two rooms during the pendency of the divorce proceedings, for he presumed, as he was the counsel in that suit, he well knew the relations subsisting between them. Appellant did not suppose it was necessary to state a fact he had a right to presume his counsel and advisor knew all about. He did not culpably or negligently conceal any fact, nor is there the slightest reason for believing he did not name this for any unworthy purpose. I think, under all the circumstances, the jury should have found the defendant not guilty, or, if technically guilty, have found nominal damages only.

If this prosecution is successful, it is reasonable to suppose his divorced wife, Mrs. Brown, and her sister, Miss Hanson, will bring a similar action with like favorable results. I am satisfied, from experience, but little countenance should be given by courts and juries to such actions. Persons knowing a criminal offense has been committed, will be deterred from prosecuting, if a conviction does not follow, by the apprehension of an action for a malicious prosecution, and they mulcted in heavy damages. The case ought to be a very clear one, to enable a plaintiff in such action to recover damages.