## APRIL TERM, 1892.

### POTTS v. MAGNES.

1. FORCIBLE ENTRY AND DETAINER—QUESTIONS PRESENTED.—In actions of forcible entry and detainer two questions are presented, viz. : Was plaintiff at the time of the entry by defendant exercising such acts of dominion over the property as constitute actual possession in law; and did defendant forcibly deprive plaintiff of this possession ?

2. TITLE NOT INVOLVED, BUT CHARACTER AND EXTENT OF POSSESSORY RIGHTS.—The ownership of the premises is not involved and title is not tried; but evidence of title is sometimes received for the purpose of showing the character and extent of the plaintiff's possession or the origin of defendant's alleged right of possession.

3. JUDGMENT ON CONFLICTING EVIDENCE.—The supreme court will ordinarily not interfere with the findings or judgment of the trial judge predicated upon conflicting testimony; such testimony having been received in open court.

4. ACTS SHOWING LEGAL POSSESSION UNDER TAX DEED.—M. received a tax deed in pursuance of purchase at a tax sale; he paid taxes for the period of nine years thereafter; he posted a notice on the premises advertising it for sale by himself; he made a contract of lease, first verbal, afterwards written, with one V. to occupy the premises for gardening purposes; he furnished posts and wire for fencing and plowed the ground; V. set the posts and attached the wire thereto; under this arrangement for seven years the ground was plowed every year, three times by M. himself; M. gave a horse and pony to V. to aid in cultivating the premises; seven years after receiving his deed he had two surveys made and erected posts according to a new survey, putting wire on some of them: *Held,* that the foregoing acts showed actual possession in law: *Held also,* that evidence tending to show that during the period named W., the lessor of P., deraigning title from the United States through patent and mesne conveyances, had constructed or partly constructed a fence around the premises, was not such an interruption of M.'s possession as to change M.'s legal *status.*

5. ACTS CONSTITUTING A FORCIBLE ENTRY UPON THE PROPERTY.—P. in collusion with others caused a frame dwelling to be moved upon the premises occupied by the lessee of M. ; nine or ten men and six teams were employed in the removal; not more than ten min-

utes were consumed in cutting the fence wires, digging up posts and getting the house upon the ground from the adjacent street: V., the agent of M., objected to the proceeding; P. immediately after the removal brought up furniture which was upon a wagon standing in a hollow near by, and took possession of the house: *Held*, that a forcible entry was sufficiently shown.

6. WHO MAY MAINTAIN FORCIBLE ENTRY AND DETAINER.—The owner of realty may maintain in his own name the action of forcible entry and detainer, though the premises are at the time occupied by an agent under a verbal arrangement to take care of the same.

Messrs. COE & FREEMAN and Mr. R. H. GILMORE, for appellant.

Mr. HUGH BUTLER, for appellee.

MR. JUSTICE HELM delivered the opinion of the court.

In January, 1886, appellant Potts took possession of the premises in controversy and has since occupied the same. On March 25th following, appellee Magnes brought this action for a forcible entry and unlawful detainer. Magnes relied upon alleged possession, supported by a tax title at the time of Potts' entry. Potts defended both his entry and his possession, as tenant under a lease from one Wall. The cause being tried to the court without a jury, judgment was entered in favor of Magnes.

In actions of forcible entry and detainer, the gist of the controversy depends upon possession. Two questions are primarily presented: *First*, was plaintiff at the time of the entry by defendant exercising such acts of dominion over the property as constitute actual possession in law; and *second*, did defendant deprive plaintiff of this possession in such manner as to create a statutory cause of action? The ownership of the premises is not involved and title cannot be tried; though sometimes evidence of title is received for the purpose of showing the *character* and extent of the plaintiff's possession, as well as the *origin* of defendant's alleged right of possession. *Smith v. Hoag*, 45 Ills. 250; *Nicholson v.*

*Walker*, 4 Ills. (Ct. of Ap.) 404. Hence adjudications in this class of actions rest largely upon questions of fact. And we proceed to consider, *first*, the evidence touching Magnes' possession of the premises in dispute at the time of the alleged forcible entry; *second*, the proofs submitted to establish the nature of the alleged ouster.

To indicate the *character* or *extent* of his possession, Magnes proved that in 1875 the property was sold to him for non-payment of taxes assessed for the preceding year; also, that on July 23d, 1877, the period for redemption having expired, a treasurer's deed issued by virtue of the statute to him in pursuance of said purchase. He likewise proved the payment of taxes from the issue of the tax deed to the date of the alleged ouster. It further appears from the testimony offered by Magnes that in July, 1877, when he first took his alleged possession under the tax deed there was an old dilapidated story and a half dwelling-house and a stable on the premises which had been unused for many years, and were not fit for use; also, that there had been a board fence, but the boards and posts were carried off so that nothing was left of the fence. The following additional facts and circumstances are testified to, chiefly by Magnes himself, viz.: That he immediately set up a sign advertising the property for sale by himself, which sign remained for two or three years; that in 1878 or 1879 he made a verbal contract with one Villette allowing the latter to use the block for gardening purposes; that he then furnished two loads of posts and some wire for fencing, and also plowed the ground; that Villette set the posts and attached the wire thereto, thus enclosing the premises with a good three wire fence; that the ground was plowed every year between 1878 and 1886, three times by himself; that in 1879 or 1880 he gave Villette a horse, and a couple of years afterwards a pony, to use in cultivating the premises; that the fence remained in good condition as late as 1884; that in 1881 or 1882 under legal advice he entered into a written contract of lease with Villette for a period of five years beginning with the 10th of February,

1879, at a yearly rental of $10, which lease he offered in evidence; that from 1877 to 1884, when the suit by Wall to quiet title (ante, page 365) was begun, nobody disputed his possession; that in 1883 and in 1884 he had two surveys made of the premises, because of rumors that the exact boundaries were not correctly shown by his deed; that afterwards he drew a load of posts to the ground and set up a good many according to the new survey, putting wire on some of them; that when the written lease expired, Villette continued to hold possession for him under an arrangement lasting for no definite period and providing neither for the performance of any particular labor nor for the payment of money; that this arrangement continued down to the 22d of March, 1886, the date of the alleged ouster; that Potts refused to give up his possession and ordered him (Magnes) off the land.

If the foregoing testimony be accepted as true, Magnes could maintain the action, unless, as appellant contends, Villette was the only proper plaintiff (a matter that will be considered hereafter). The acts of dominion thus shown are sufficient in the absence of other proofs to establish actual possession in law; so it is not necessary to notice the contention of counsel for appellee, that under the statute actual possession is not indispensable. *Wier v. Bradford*, 1 Colo. 14; *Allen v. Tobias*, 77 Ills. 169.

To meet the foregoing proofs of Magnes, the following evidence was introduced by Potts: A lease for one year from Wall; title in Wall through deeds executed in April and May, 1884, coupled with a chain of prior mesne conveyances reaching back to the original patentee from the government. The presence of Villette and the cultivation of the ground by him from 1877 down to the date of the alleged ouster are not denied. But Villette when called as a witness for Potts testifies in part substantially as follows: That about four years prior to the appearance of Magnes on the scene, he went upon the premises under an arrangement with one Tyler, Wall's immediate grantor; that by this arrangement he was

to have the crops for taking care of the land; that he then constructed a fence around the premises and built an addition to the house formerly there and occupied the same part of the time; that the night before Magnes first came to see him he slept in the house; that when Magnes claimed to own the property he told him that it belonged to Tyler, and that he would have nothing to do with him, as he was holding it for Tyler. Villette denied making any arrangement with Magnes, by lease or otherwise, to rent the property from him. When confronted with the written lease he reluctantly acknowledged his signature, but said that when he affixed the same he was intoxicated and supposed the instrument related to other lands. Mrs. Plummer, Villette's daughter, also a witness for Potts, states that prior to the appearance of Magnes her father had for several years been occupying the ground under an arrangement with Tyler. Peter Plummer, an eighteen year old grandson of Villette, testified to Villette's occupancy of the property prior to Magnes' claim and to having once seen Villette thereon in conversation with Tyler. Villette also undertakes to maintain, and his daughter slightly corroborates him, that Magnes tried by illegal means to influence his testimony in the case. At the date of the trial, Tyler was deceased.

It will be observed that the testimony of Magnes and Villette is as to a number of important particulars in direct conflict and cannot be reconciled. Villette's truthfulness is seriously affected by contradictions and inconsistencies appearing in his statements and conduct upon the witness stand. But the entire evidence was received in open court. The trial judge saw the witnesses, noted their demeanor and was in better position to correctly resolve conflicts and inconsistencies than are we. That court adopted Magnes' version of the transactions, and we do not feel warranted in interfering. We must therefore conclude that the possession of Magnes at the time of the alleged ouster was sufficiently shown.

We may accept as true the evidence tending to show that

while Magnes was performing the various acts of dominion above mentioned, the agent of Wall constructed or partly constructed a fence around the premises. Nevertheless, under the circumstances, we do not think that this slight interruption of Magnes' possession was sufficient to charge the legal *status* of the parties as above outlined.

The ouster above mentioned constitutes the remaining essential matter in the present adjudication. Turning to the evidence relating thereto we find that on March 22, 1886, a frame dwelling-house was moved upon the premises and occupied immediately by Potts. Concerning portions of this transaction there is also conflicting testimony, and some difficulty is encountered in discovering the truth. Roberts, a witness for plaintiff, who moved the house, says that his contract for the removal was made with one Pettit, who claims to have acted as the agent of Wall; that Pettit told him there was a watchman upon the premises and he should move the house in carefully so as not to be found out by the watchman; that he said to Pettit, "I suppose I am to jump the lot," Pettit's answer being, "that the man had possession of the lot by a tax title and they were going to get possession of it;" that in accordance with directions from Pettit, when they approached the premises he and one of his men went ahead to see that the "coast was clear;" that they did not consume more than ten minutes altogether in cutting the wires, digging up the posts and getting the house upon the ground from the adjacent street; that in moving the house he had in his employ nine or ten men and six teams; that when he drove upon the premises Villette came up excitedly finding fault and demanded to know if Peter Magnes sent the house; that upon being told by him (Roberts) that he did not know, Villette ordered him to take it away and kept talking and gesticulating while he went on with the work; that defendant Potts assisted him in hauling the house to the premises and in blocking it up; that Pettit was to fu. nish "cutters" to cut the wires and they were produced on the ground by Potts; that Potts immediately brought up

his furniture which was upon a wagon standing in a hollow near by. Witnesses Swansea, Meadows, Howes and Whittaker all of whom assisted Roberts in moving the house, corroborate him to a greater or less extent, either as to the manner of getting the building upon the ground or as to the conduct and language of Villette. Witness Carter states that on the next day when he was proceeding in pursuance of orders from Pettit to tear down the old house, Magnes, who at this time appeared, ordered him not to do so, saying: "This is my property;" also, that Villette who came with Magnes commenced talking, and though he did not fully understand him it sounded as if he said, "No, no, no, you no tear down." Witness Stone states that on the next day after the taking of possession he, assisted by defendant Potts, moved another part of the building upon the premises.

Pettit vigorously contradicts a portion of Roberts' testimony, but the main circumstances immediately connected with moving the house and taking possession are substantially shown by the foregoing evidence. Potts' connection with the removal of the house and his entry upon the ground therewith is denied; but being in another part of the state he does not testify, and Roberts' statement as to his presence is not wholly uncorroborated; moreover, the celerity with which he occupied the house with his family and furniture after the removal shows that he could hardly have been ignorant of the proceeding. The lease by Wall to Potts was executed on the first and second evenings succeeding the removal and entry of Potts into possession. Evidence is offered to show a quarrel between Pettit and Roberts and thus to affect the latter's credibility. But here again we observe, as we observed in connection with the proposition first considered, the court below was better situated than we are to resolve questions in relation to which the evidence is conflicting. To reach the conclusion announced, that court must have accepted as true the proofs tending to show a forcible entry and also that Potts was either present, assisting, or that he aided, or was in a measure responsible

for such entry. We cannot say that error was committed in these respects.

But it is contended that if Magnes' theory of the case be correct, Villette and not he was the proper person to bring the action. True it is that a lessee may ordinarily bring an action for a wrongful ouster; but while Villette had at one time been in possession by virtue of the written lease from Magnes for a period of five years, this lease had expired and Villette, according to the testimony of Magnes, simply occupied under a verbal arrangement to take care of the premises for the latter. He was in reality merely an agent for Magnes, and Magnes could at any moment terminate the agency and occupancy. In the light of this testimony, Villette had no beneficial right or interest, and Magnes was the party primarily and directly injured by the ouster.

The tax deed through which Magnes claims title is challenged by appellant as invalid. Counsel for both parties treat this challenge as of secondary importance and content themselves with a reference to briefs filed in the case of *Wall v. Magnes* above mentioned. In view of the evidence touching various acts of dominion over the property and the findings of the court thereon necessary to the judgment under consideration, the validity of this tax deed is not necessarily involved on this appeal. For the same reason we shall decline to enter into a discussion of the points made and authorities cited in the reply brief touching the statute of limitations. If Magnes could only maintain the action by showing such possession under color of title in good faith as the statute of limitations requires, we might be compelled to say whether the tax deed does or does not amount to color of title; but enough has been said to show that the statute of limitations need not now be considered.

The judgment is affirmed.

*Affirmed.*