[Civil No. 3636.  Filed December 30, 1935.]

[52 Pac. (2d) 1166.]

POPE HIXON and BELLE HIXON, His Wife, and JAMES BOLEN, Appellants, v. J. A. DAVIS and ELIZA L. DAVIS, His Wife, Appellees.

Mr. Jno. C. Lee, for Appellants.

Mr. Richard F. Harless, Mr. Terrence A. Carson and Mr. I. F. Wolpe, Jr., for Appellees.

LOCKWOOD, C. J.—J. A. Davis and Eliza L. Davis, his wife, hereinafter called plaintiffs, brought suit against Pope Hixon and Belle Hixon, his wife, hereinafter called defendants, and James Bolen, a tenant of defendants, alleging, in substance, that plaintiffs were the owners of certain real property in Maricopa county and entitled to the immediate possession thereof; that defendants were tenants of such premises by sufferance of the plaintiffs; and that, although repeatedly notified to quit possession thereof, they had failed to do so. The prayer for relief was that the defendants and Bolen be adjudged guilty of for-

cible and unlawful detainer and that plaintiffs recover possession of the premises. Defendants answered, denying that they were tenants of plaintiffs, and alleging that they were and had been the owners and in possession of the land in controversy since about the 26th day of January, 1929, by virtue of a certain contract of purchase and sale.

The case came to trial before the court sitting without a jury, and evidence, both oral and written, having been introduced, the court found that the defendants were guilty of forcible detainer and rendered judgment against them and in favor of plaintiffs for immediate possession of the premises, whereupon this appeal was taken.

There are some nine assignments of error. Most of these, under the rules and decisions of this court, are not sufficient to present any questions for our determination; but we think there are two which may be considered, the first going to the form of the action and the second to the merits of the controversy. The first question is whether on the pleadings and evidence the court could enter a judgment in forcible detainer, it being the contention of the defendants that the only issue raised thereby was as to who held the title to the land. The plaintiffs, in support of their complaint, offered evidence that defendants went into possession of the premises in 1929, and then introduced a quitclaim deed from defendants to plaintiffs which covered the land and which had been delivered to plaintiffs in March, 1934, and by them duly recorded, together with proof that defendants had, after such recording, been notified repeatedly, in writing and orally, to surrender possession of the premises. It was their theory of the law of the case that where a grantor is in possession of premises and while in such possession deeds them to another person

and thereafter retains possession thereof, after a demand to surrender them has been made by the grantee, he is a tenant at sufferance and forcible detainer is the proper remedy to recover possession. We are of the opinion that this is a correct statement of the general principle of law and that plaintiffs, by showing the facts above referred to, made a *prima facie* case in forcible detainer. *Colvin* v. *Colvin,* 24 Ga. App. 630, 101 S. E. 586; *Sanders* v. *Richardson,* 14 Pick. (Mass.) 522; *Bush* v. *Fuller,* 173 Ala. 511, 55 So. 1000; *Taylor* v. *O'Brien,* 19 R. I. 429, 34 Atl. 739; *Work* v. *Brayton,* 5 Ind. 396; *New York Life Ins. & Trust Co.* v. *Cutler,* 3 Sandf. Ch. (N. Y.) 176, 177; *Bennett* v. *Robinson,* 27 Mich. 26; *Brown* v. *Smith,* 83 Ill. 291; section 4313, Rev. Code 1928.

The answer of defendants, while admitting the facts stated aforesaid, attempted to avoid them by showing that the deed in question had been in the custody of a third party, under certain instructions in regard to its delivery, and that it had been delivered in violation of those instructions, the plaintiffs well knowing such to be the case.

If the delivery of the deed was in violation of the terms of the deposit with the escrow holder it, of course, conveyed no title to plaintiffs. *Baker* v. *Best,* 107 S. W. 1192, 33 Ky. Law Rep. 1; *Dunlevy* v. *Fenton,* 80 Vt. 505, 68 Atl. 651, 130 Am. St. Rep. 1009; *Grindle* v. *Grindle,* 240 Ill. 143, 88 N. E. 473. And if they had no title to the premises, the basis upon which plaintiffs claim their right to possession having failed, the action would necessarily fail. We are of the opinion that the pleadings and the evidence did properly present a case wherein the court had jurisdiction to determine the question of whether plaintiffs or defendants were entitled to the possession of the land, and the allegations and proof in regard to the

title were merely incidental to the question of the right of possession. *Lencki* v. *Schultz,* 198 Ill. App. 294; *Potts* v. *Magnes,* 17 Colo. 364, 30 Pac. 58; 26 C. J. 859, and cases cited.

This leads us to the consideration of the case on its merits, the vital question being whether or not the deed in question was legally delivered to plaintiffs. In so determining, it is necessary that we state the facts of the case as shown by the evidence construed, under our well-known rule, as strongly in favor of plaintiffs as may reasonably be justified.

On the 26th day of January, 1929, plaintiffs were the owners of 100 acres of land situated in Maricopa county, 20 acres of which comprise the premises in controversy in this action. All of said land was encumbered by a blanket mortgage in favor of the Federal Land Bank of Berkeley, California, dated May 1, 1923. It was originally in the sum of $8,200, but at the time of making the contract hereinafter referred to the principal had been reduced to approximately $7,600. On the date first mentioned, plaintiffs and defendants entered into a contract of purchase and sale of the 20 acres involved herein. The contract set up the purchase price as $5,000, to be paid $1,000 in cash and the remaining $4,000 in annual installments of $800 each; $2,000 bearing interest at the rate of 5 per cent. per annum, and the remainder at the rate of 8 per cent. The agreement then recited the existence of the Federal Land Bank mortgage above referred to and continued with the following language:

"The parties of the first part covenant and agree with the parties of the second part that all payments now due upon said mortgage have been made, and that they will make, before delinquent, all payments due · hereafter upon said mortgage and keep said mortgage in good standing. That they will pay all

taxes and assessments levied and assessed against the land covered by said mortgage, except the taxes and assessments levied against said land, above described, which are provided for as hereinafter set forth. That out of the purchase price of said land, above described, to be paid the parties of the first part, they will pay said mortgage existing against said land, and have said land released from said mortgage. That, in the event the parties of the first part fail to make any of said payments due under said mortgage, either of principal or interest, taxes or assessments, so that said mortgage will be in danger of foreclosure, the parties of the second part are hereby given the right and authority to make said payments and the amount so paid by the parties of the second part shall be credited upon the purchase price of said land above described, as hereinabove provided. That when said purchase price has been reduced to Two Thousand ($2,000.00) Dollars, the parties of the second part may have said Federal Land Bank of Berkeley loan segregated, if they desire, and the amount loaned to the parties of the second part by said bank, or any other person, upon said land, shall be credited on the purchase price of said land to the parties of the first part, and the parties of the first part agree to accept a second mortgage for any balance that might be owing them.''

It then provided that the plaintiffs and defendants should place in escrow deeds each to the other, together with a copy of the agreement, and continued:

''Should, however, the parties of the second part fail to make the payments due under this agreement and should they be in default for the length of time provided by the Laws of the State of Arizona, relative to declaring a forfeiture in an agreement to purchase real property, then the parties of the first part may, at their option, declare the interest of the parties of the second part in this agreement and in said real property, forfeited, and they shall be entitled to said escrow papers, and to the possession of said real property and all payments theretofore made shall be

retained by the parties of the first part as rent and liquidated damages.''

The $1,000 initial payment was duly made, and the other payments as they became due or as the time therefor was extended by mutual agreement, up to the latter part of the year 1930. At that time payments were made which reduced the amount still due on the premises to approximately $2,000, and defendants then notified plaintiffs of their desire to exercise their option set forth above of having the Federal Land Bank segregate its mortgage loan. The parties went to the office of one Anderson, the agent of the Federal Land Bank in Phoenix, to discuss the segregation of the loan. There is some difference between the witnesses as to just what occurred at that time. Defendant Hixon claims when Davis was informed by the agent of the terms of the segregation that he did not want to agree to them because he would lose his bank stock, and that nothing further was done in regard to the segregation. Davis, on the other hand, stated that at the conference with Anderson the latter told Hixon he would have to put up $25 for the costs of making the segregation, and that $1,500 less 5 per cent., was the total loan which the bank would allow on the premises, and that Hixon then refused to proceed further. Davis also testified that he had never refused to make the segregation if Hixon desired to go ahead with it; that he had at all times kept up all payments due to the Federal Land Bank; and that he was always willing to clear the land of the mortgage if and when he was paid the full purchase price therefor.

Taking the pleadings, the contract, and the evidence together, it is very plain that the real issue between the parties, after the payment of all but $2,000 on the purchase price in 1930, was whether it was incumbent

upon plaintiffs to take the necessary steps for the segregation of the land bank loan or upon defendants, each insisting that the initiative should come from the other. The terms of the contract will necessarily show upon whom that burden rested. On considering the terms above set forth, we are of the opinion that the option of choosing to segregate the mortgage lay with the defendants, and that upon so choosing it was incumbent upon them to see that the segregation was carried out and not upon the plaintiffs, the latter being bound only to cooperate with defendants to the extent of accepting as payment on what was still due them, of the amount of their original loan segregated by the land bank, and of taking a second mortgage on the land for the balance of the purchase price. It is obvious that defendants did not have the loan segregated and did not offer a second mortgage of any nature to plaintiffs, nor did they continue with the payments of the balance still due on the purchase price. In short, having paid only $3,000 of the purchase price they failed to pay the remaining $2,000, either in annual installments of $800 as they might have done under one clause of their agreement, or by segregating the land bank loan as they might have done under the other. Notwithstanding this, they remained in possession for over three years, making no payment or offer of payment to anyone, the plaintiffs being even compelled to pay the taxes upon the premises. When these facts were called to the attention of the escrow holder, it very properly, under the conditions of the agreement, turned over the deed from defendants in favor of plaintiffs to the latter. From this time, under the law as above set forth, defendants were merely tenants at sufferance. The court, therefore, very properly rendered judgment that they were guilty of forcible

detainer and ordered possession of the premises be delivered to plaintiffs.

Judgment affirmed.

McALISTER and ROSS, JJ., concur.