204 P.2d 475

**BRAZEE v. MORRIS.**
**No. 5093.**

Supreme Court of Arizona.
March 28, 1949.

Rehearing Denied April 28, 1949.

226

Theodore G. McKesson, Thomas P. Riordan and James D. McKesson, all of Phoenix, for appellant.

John M. Levy and Lloyd J. Andrews, both of Phoenix, for appellee.

UDALL, Justice.

This is an appeal by Robert H. Brazee, plaintiff below, from a judgment of the superior court of Maricopa county denying him specific performance of an alleged option agreement between George T. Morris, defendant-appellee, and himself, whereby the defendant agreed to sell to plaintiff two lots in the Collins Addition to the City of Phoenix upon the latter's exercise of the option.

The case is before us for the second time. At the original trial the jury found, upon the only interrogatory presented to them, that defendant had not signed the option agreement, and, as the action had been brought upon such written instrument, judgment was entered for the defendant. We reversed the judgment and ordered a new trial, Brazee v. Morris, 65 Ariz. 291, 179 P.2d 442, because of improper cross-examination of a handwriting expert.

Upon the retrial the jury answered the interrogatory relative to the genuineness of defendant's signature directly contrary to the finding on the similar interrogatory submitted at the first trial, their verdict being that the signature on the written option agreement was that of the defendant Morris. However, a second interrogatory reading, "Was the signature of G. T. Morris, the defendant, obtained on Plaintiff's Exhibit J, being the option agreement, obtained by fraud and misrepresentation?" was submitted to the jury and answered by them in the affirmative. It is upon this last finding that the present judgment rests. The case was retried upon the original pleadings, no amendments having been made thereto. At the close of all of the evidence counsel for plaintiff moved for a directed verdict, which motion was denied. After the verdict had been rendered, but before judgment had been entered these additional mo-

tions were also made and denied by the court: a motion for judgment of specific performance in accordance with the answer to interrogatory number one; a motion for judgment notwithstanding the verdict; and a motion for a new trial. The notice of appeal covers the denial of all these motions.

While plaintiff has submitted seven assignments of error and three propositions of law, we believe that the appeal may readily be determined upon the challenge to the sufficiency of the evidence to sustain the allegation of defendant's answer "that said (his) signature was obtained by fraud and misrepresentation on the part of the plaintiff with no consideration whatever."

In the former opinion we discussed, in a somewhat abstract manner, the legal sufficiency of this method of pleading fraud as a defense, but concluded that in any event the plaintiff was in nowise prejudiced as the case was tried wholly upon the issue of genuineness of defendant's signature. This comment is equally applicable to the second trial. Certainly nothing that was said in our previous decision in Brazee v. Morris, supra, was intended to sanction a departure from the well-established rules requiring the stating with particularity of the circumstances constituting fraud or mistake. This principle of pleading is so clearly stated in our rules and so well imbedded in our decisions as to be no longer subject to question in this jurisdiction.

This court has repeatedly held that when fraud is relied upon, either in the complaint or the answer, it must be established by clear and satisfactory evidence. Schwalbach v. Jones, 27 Ariz. 260, 232 P. 558. We have expressed the applicable rule in these words: "Fraud is never presumed. Nor can it be found to exist on a mere suspicion as to the possibilities thereof. Ruby v. United Sugar Companies, 56 Ariz. 535, 109 P.2d 845; Sunseri v. Katz, 53 Ariz. 234, 87 P.2d 797. It must be established by clear and convincing evidence. Cole v. Town of Miami, supra [52 Ariz. 488, 83 P.2d 997]. * * *" Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866, 869; Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741; 24 Am.Jur. Fraud and Deceit, section 255; 37 C.J.S., Fraud, §§ 94 and 114.

In Harrison v. Roark, 31 Ariz. 73, 250 P. 367, 368 we defined actual fraud in these words: "'When the party intentionally, or by design, misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage over him, in every such case there is a positive fraud, in the truest sense of the terms.' Willink v. Vanderveer, 1 Barb., N.Y., 599, 607."

And we have described constructive or legal fraud as:

"' * * * Constructive fraud * * may be defined as a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the fraud feasor,

the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud * * '." Bell v. Bell, 44 Ariz. 520, 39 P.2d 629, 637.

"Constructive fraud arises out of a fiduciary or confidential relationship. In re McDonnell's Estate, supra [65 Ariz. 248, 179 P.2d 238] * * *." Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590, 595.

■ With these rules, both of definition and the required quantum of proof in mind, we must consider the evidence adduced to support the claim of either actual or constructive fraud. We preface our treatment of this matter with the observation that by far the greater part, if not all, of defendant's proof was directed to disproving the genuineness of the signature upon the written option agreement. The jury's answer to the interrogatory upon this point and its adoption by the court's judgment, from which no cross-appeal was taken by defendant, forecloses any review of this finding, and the indirect claim that defendant's signature had been traced or forged falls by the same token. We are entitled to proceed, then, with it as an established fact that defendant signed the option agreement.

■ The additional facts essential to a disposition of this appeal, stated as they must be in the light most favorable to a sustaining of the judgment are these: Defendant was the owner of the two city lots in question, upon the back part of which he lived, and plaintiff was his tenant, occupying the front area. During the period of this tenancy defendant gave one Kellogg, a real estate broker, an exclusive listing of this property at a price of $10,-000. When plaintiff learned of this he importuned the defendant to cancel the listing and give him an antedated written option to confirm an alleged earlier oral option to buy the premises for $8,000. Defendant denied that he ever gave the plaintiff an oral option, and stoutly maintained throughout both trials that he never executed the written option (found by the jury to bear his signature). He freely admitted, however, that he accompanied plaintiff on a visit to an attorney to discover how to cancel the listing, that he went with plaintiff to Kellogg's office later for the same purpose, and that he wrote Kellogg a letter wherein he stated that he desired to cancel the listing as in making same he had overlooked the prior oral option given plaintiff.

There is not a scintilla of evidence in the record that plaintiff misrepresented any material facts to defendant, or produced a false impression to mislead, cheat, or entrap him into signing the option agreement. Defendant's own admissions conclusively establish that he knew precisely what was being done to break the listing with Kellogg, and that he cooperat-

ed fully with plaintiff to accomplish this end. Defendant's evidence could only be interpreted as an attempt to raise the defense of undue influence on the part of plaintiff in inducing defendant to break the listing with Kellogg, and in no sense could it be construed as establishing that defendant's signature to the option agreement had been obtained by fraud.

 From the record we can say as a matter of law that no confidential relationship can be found to have existed between the parties. Brazee was neither a relative, confidant, nor advisor of Morris, and they operated at arm's length throughout all of their dealings. While it was shown that the defendant was ninety years of age, "old age alone, when not attended by incapacity to look after his business affairs, gives rise to no presumption of undue influence, * * *" 17 Am.Jur., Duress and Undue Influence, section 39; 37 C.J.S., Fraud, § 95. The proof is wholly insufficient to show that defendant was deprived of his free agency, but even had the evidence been adequate to present such a defense, the rule is that to be available it must be specially pleaded. "While undue influence is a species of fraud, it must be treated as undue influence, and a plea of fraud will not ordinarily raise the issue of undue influence." 17 Am.Jur., Duress and Undue Influence, section 36.

See also Tanforan v. Tanforan, 173 Cal. 270, 159 P. 709; Feil v. Wells, Mo.Sup., 282 S.W. 25; Cooper v. Agee, 222 Ala. 334, 132 So. 173.

 We have painstakingly examined the reporter's transcript and are unable to find any evidence at all which would even tend to establish that fraud, either actual or constructive, had been practiced by plaintiff to secure defendant's signature to the option agreement. The learned trial court therefore erred in this equity matter, first, in submitting the issue of fraud to the jury; and, second, in denying plaintiff's motion for judgment notwithstanding the answer given by the jury to the second interrogatory.

The judgment is reversed, and under the authority granted us by section 21-1832, A.C.A.1939, the cause is remanded to the lower court with directions to enter judgment for plaintiff requiring the defendant to specifically perform the option agreement.

Reversed with directions.

STANFORD, PHELPS and DE CONCINI, JJ., concurring.

Due to illness, the CHIEF JUSTICE did not participate in determining this appeal.