401 P.2d 412

**Alma Mae HIGGINS, also known as Mae Higgins, also known as Alma Mae Rasler, Appellant,**

v.

**Raymond J. KITTLESON and Carol J. Kittleson, his wife, Appellees.***

**I CA–CIV 36.**

Court of Appeals of Arizona.

May 5, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7655. This matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Albert H. Mackenzie and Vern E. Gasser, Phoenix, for appellant.

Tognoni, Parsons, Birchett & Gooding, by William H. Gooding, Phoenix, for appellees.

DONOFRIO, Judge.

This appeal is taken from an order of the lower court granting defendants' motion for an instructed verdict at the close of plaintiff's case. The appeal has been dismissed as to all defendants except Raymond J. Kittleson and wife. Appellant was plaintiff in the lower court and appellees were defendants. Hereafter we will refer to them as plaintiff and defendant.

The facts are that plaintiff was the owner of a large ranch in Glacier County, Montana, and defendant was the owner of a twelve unit motel on South 17th Avenue, in Phoenix. On December 31, 1959, they entered into an offer and agreement for the exchange of these properties. The terms were that plaintiff would purchase the motel for $90,000. Plaintiff's ranch was valued at $50,000, less a $6,000 mortgage. The equity in this ranch was to be the down payment towards the motel. Each party was given thirty days within which to inspect the respective pieces of property and give his acceptance to the exchange. The defendant was to provide a letter from an oil company stating it would purchase one half of the motel property for $45,000.

Plaintiff contended and testified that during the negotiations defendant made, among other things, representations that the motel was good income property in a good section of town, earning from $1,700 to $2,000 per month. About January 3, 1960, plaintiff moved into the motel, made some purchases of material to fix it up and did some work on the premises. Defendant also was frequently at the motel and paid for some of the repairs to the premises.

January 7, 1960, plaintiff was asked to go to the Security Escrows of Arizona office to sign some papers to expedite the closing of the transaction upon final acceptance. Plaintiff signed many papers, which she testified were in a stack. Plaintiff claims she was assured that the papers were to be held in escrow until final acceptance by the parties.

A warranty deed from plaintiff to defendant of the ranch was recorded in Montana on January 11, 1960. Plaintiff claims she was not aware that she signed such a

deed, and that she had no intent to have such delivered to defendant.

Plaintiff further contended that defendant did not produce the letter from the oil company which she repeatedly requested. On January 29, 1960, plaintiff by her attorney gave written notice by registered mail of her refusal to accept the motel. The reasons she set forth, among other things, were that upon investigation she found many of the representations made about the property untrue.

Duplicate copies of the Offer and Agreement of Exchange were admitted in evidence. Comparison discloses that the copy in possession of defendant was interlineated with the statement "Property accepted and approved R. J. Kittleson" and "Property inspected and acceptable Mae Higgins." The copy in the possession of the plaintiff has no such interlineation. Plaintiff admitted her signature following the words but denied that the words were on the paper when she signed.

On February 4, 1960, the Security Escrows of Arizona filed and recorded in Maricopa County an Agreement of Sale between the parties.

Plaintiff's amended complaint consists of fifteen pages with a prayer which is divided into eleven paragraphs. The complaint is somewhat confusing in the manner in which it sets forth its claims for relief. The prayer, among other things, asked that the court adjudge that there is no final and binding agreement for the exchange of the properties, and that any warranty deed affecting title to plaintiff's ranch in Montana be declared void, of no affect, and that all contracts and instruments involved be returned to the plaintiff. She brought action under several theories. One was based upon fraudulent representations and deceit of the defendants in representing the motel property. We shall deal with this first.

■ Fraud actions of this type must contain certain essential elements. Our Supreme Court has set forth these necessary ingredients in More v. Meyers, 31 Ariz. 347, 253 P. 626 (1927). At page 354 of the Arizona Reports, at page 628 of 253 P. they said:

"The elements of actionable fraud may be stated as follows: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury."

■■ Plaintiff's evidence is that by the agreement she was given thirty days to completely inspect the property and give acceptance and that because of the fraudulent representations she decided not to give her final acceptance. Thus we are confronted with the fact that plaintiff was given time to investigate and inspect before consummating the trade. Also that she investigated the representations and has assigned their falsity as a basis for not finally accepting. In view of this we cannot see in plaintiff's case the necessary proof of many of the aforementioned elements particularly elements 5 through 9 above stated. Fraud is not to be presumed, but must be proven in each of its elements by clear and convincing evidence. Cole v. Town of Miami, 52 Ariz. 488, 83 P. 2d 997 (1938); Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866 (1941); Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741 (1948); Brazee v. Morris, 68 Ariz. 224, 204 P.2d 475 (1949).

■ A verdict on these issues would not stand, therefore we agree with the ruling only insofar as it applies to this aspect of the case. The court is justified in directing a verdict where evidence is insufficient to support a contrary verdict, or so weak that the court would feel constrained to set aside such a verdict on a motion for new trial. Costello v. Wood, 89 Ariz. 270, 361 P.2d 10 (1961).

Plaintiff complains that she was prevented from adequately making her offers

of proof. Although she may have been improperly restricted in some of her offers during the trial we can see nothing in the evidence sought to be introduced which would change our opinion in this regard.

There are other theories of plaintiff's complaint, i. e. basis of liability, upon which considerable evidence was introduced. We shall deal with these in the order in which they appear in the amended complaint.

In order to more clearly understand each theory it becomes necessary to briefly set out certain allegations forming the basis of plaintiff's claim in that regard. These theories are plead alternatively.

Plaintiff alleged that an offer and agreement for exchange of property was executed on December 31, 1959, between herself and defendant. In this agreement she was to exchange her property in Montana for motel property in Phoenix owned by the defendant.

She further alleged that the said agreement provided among other things, that:

"First owner (Kittleson) to be given 30 days within which to inspect the second parcel and give final acceptance to exchange.

"The second owner (Mae Higgins) is given 30 days to completely inspect the first parcel and give final acceptance. The first owner to provide letter from oil co. stating they will purchase ½ of the first parcel."

That in connection with the last sentence of the above quoted provision, it was further agreed between the plaintiff and defendant that if she finally accepted such offer of exchange within thirty days from said date of December 31, 1959, that he, Kittleson, would provide and transfer to her a bona fide offer then in his possession of $45,000 from an unnamed oil company for the purchase of one half of his property.

Plaintiff alleged that defendant never produced any such offer of purchase from the oil company and that this failure constituted a breach of contract. In this con-

nection plaintiff further alleged that this failure to provide such offer of purchase was a failure of a material and inducing consideration of the agreement.

■ A motion for a directed verdict admits "the truth of whatever competent evidence the opposing party had introduced including the reasonable inferences to be drawn therefrom * * *." Nichols v. City of Phoenix, 68 Ariz. 124, 129, 202 P. 2d 201, 204 (1949). With this in mind we must now consider the evidence.

The agreement, exhibits 1 and 5, admittedly signed and relied upon by all parties unequivocally sets out the conditions above alleged. We have read the transcript and the plaintiff consistently asked for and demanded the offer of purchase of one- half of the property by the oil company. The offer was never forthcoming. The evidence was that the price to be paid for the half was $45,000.00.

■ There is no question that this is a material and substantial condition of the contract and the failure to comply with this provision constitutes a breach of contract. Upon the breach of contract a party not at fault, ordinarily, has a choice of three remedies. (1) He may rescind with the usual rights and duties of such an action. (2) He may refuse to recognize the breach and compel its performance. (3) He may treat the breach as terminating the contract and sue for damages. Weatherford v. Adams, 31 Ariz. 187, 251 P. 453 (1926). Plaintiff's complaint may be interpreted as pursuing remedies (1) and (3) above stated. At the end of her case in chief she only withdrew the application for damages, leaving the remainder of her claims. She should be required to clearly state and elect which remedy she is pursuing.

We hold that the learned trial court in directing a verdict notwithstanding this aspect of the case committed prejudicial error.

■ Another theory of the complaint is that plaintiff had never given final acceptance to the agreement and therefore no

agreement was reached. The evidence on this point was conflicting. The plaintiff admitted her signature to exhibit 5 after the words "Property inspected and acceptable" but denied writing or seeing these words at the time of signing. Plaintiff offered in evidence a letter dated January 29, 1960, written by her attorney to defendant Raymond P. Kittleson and Charles B. Christy & Associates (listing brokers) refusing final acceptance in accordance with the agreement.

By the plain meaning of the offer and agreement of exchange the plaintiff had the right to elect to not go through with the exchange without assigning reasons therefor.

This is an issue which should have been properly submitted to a jury.

Our Supreme Court has stated:

" * * * a verdict will not be directed in a case where the evidence is conflicting or where on all the facts and circumstances proven there is room for fair and sensible men to differ in their conclusions. * * *" Davis v. Boggs, 22 Ariz. 497, 505; 199 P. 116, 119.

To consider the next theory advanced by plaintiff it is necessary to set out certain allegations of the complaint. Plaintiff alleged that on about January 7th, 1960, defendants, Kittleson, Christy and Hancock, in connection with the negotiations induced plaintiff to go to the offices of defendants Gordon W. Beck and Security Escrows of Arizona and stated to her that it was necessary to have certain papers signed by the parties in order to have them ready if and when she should give final acceptance. That she went to their offices and at the request of defendants, Kittleson, Christy, Hancock and Beck, signed a number of instruments laid out for her, the true nature and effect, however, of which she was not then properly made aware of by any of the defendants. That said four defendants expressly stated that no paper or document would be binding or released from said escrow until plaintiff had given her final acceptance to the exchange agreement by written notice.

That contrary to the Escrow and agreement, defendants, Security Escrows and Beck, released from their possession two instruments, one purporting to be "Change of ownership of Land" addressed to the United States Department of Agriculture and another purporting to be a warranty deed to the ranch in Montana.

Introduced in evidence as Exhibits 2 and 3 are escrow instructions signed by the parties bearing the date of January 7, 1960. These contain the usual provisions setting up escrows in real estate transactions. Exhibit 3 which designates the plaintiff as seller and the defendant as buyer provides that the deed delivered to the escrow agent shall "be held by Escrow Agent until the terms hereof have been performed" and thereafter be delivered to the buyer.

Inasmuch as the appeal has been dismissed as to all defendants except the Kittlesons we shall not belabor this opinion on matters relating to the dismissed defendants.

The fact issue hereby presented is whether the warranty deed was delivered without authority, i. e. delivered before the acceptances were given.

The offer and agreement of exchange contemplated the setting up of an escrow which called for the execution of the necessary documents and deeds. Plaintiff admits signing the escrow instructions and certain documents, however, the escrow is dependent upon the agreement. Young v. Bishop, 88 Ariz. 140, 353 P.2d 1017 (1960). At page 146 of the Arizona Reports, at page 1021 of 353 P.2d the court said:

"Briefly stated, a contract of sale of real estate and an escrow arrangement are not interchangeable entities. A binding contract of sale must exist with

respect to the subject-matter of the escrow instrument to support an enforceable escrow, Johnson v. Wallden, 342 Ill. 201, 173 N.E. 790; McLain v. Healy, 98 Wash. 489, 168 P. 1, L.R.A. 1918A, 1161; Security-First National Bank v. Clark, 8 Cal.App.2d 709, 48 P. 2d 167. A good definition of the generic term 'escrow' is this: an escrow is a written instrument which by its terms imports a legal obligation, and which is deposited with a third party, to be kept by the depository until the performance of the prescribed condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee. Merchants Nat. Bank of Aurora v. Frazier, 329 Ill.App. 191, 67 N.E.2d 611; Angelcyk v. Angelcyk, 367 Pa. 381, 80 A.2d 753. In short, an escrow primarily is a conveyancing device designed to carry out the terms of a binding contract of sale previously entered into by the parties." 88 Ariz. 146, 353 P.2d 1021.

 The law is well settled that an escrow agent acts in a fiduciary capacity and must conduct affairs with which he is entrusted with scrupulous honesty, skill, and diligence. Tucson Title Ins. Co. v. D'Ascoli, 94 Ariz. 230, 383 P.2d 119 (1963). That he (Escrow Agent) is a trustee and must act in accordance with terms of the escrow agreement. Malta v. Phoenix Title & Trust Co., 76 Ariz. 116, 259 P.2d 554 (1953). And that if he (Escrow Agent) delivers a deed in violation of the terms of deposit that the deed conveys no title to grantee. Hixon v. Davis, 46 Ariz. 543, 52 P.2d 1166 (1935). D'Ascoli (supra).

Since there was conflicting evidence as to whether the escrow agent fraudulently delivered the deed before the performance of the required conditions, then it was up to the jury to decide the conflict.

It is error to direct a verdict if a party opposing the directed verdict would have been entitled to verdict on any theory of the case presented by the pleadings and evidence. Campbell v. Brinson, 89 Ariz. 197, 360 P.2d 211 (1961).

For the reasons stated we hold the learned court was in error in directing a verdict against the plaintiff.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

STEVENS, C. J., and CAMERON, J., concur.