[Civil No. 2518. Filed February 21, 1927.]

[253 Pac. 626.]

MAGGIE YOUNG MOORE and A. J. MOORE, Appellants, v. JAMES MEYERS, Operating Under the Firm Name of MEYERS INVESTMENT COMPANY, and J. R. JOHNSON, NATIONAL SURETY COMPANY, a Corporation, and E. HICKMAN, Appellees.

Mr. T. E. Allyn, for Appellants.

Mr. John W. Ray, for Appellees.

LOCKWOOD, J.—Maggie Young Moore and A. J. Moore, her husband, hereinafter called plaintiffs, brought suit against James Meyers, operating under the firm name of Meyers Investment Company, J. R. Johnson, National Surety Company, a corporation, and E. Hickman, for damages sustained by plaintiffs through the alleged fraudulent representations of Meyers and Johnson, whom we will hereinafter call defendants, in regard to the sale of certain real estate located in Phoenix. Meyers was a real estate broker, bonded under chapter 160, Session Laws of 1921, and Johnson was a salesman for Meyers, bonded

under the same act, while the National Surety Company and Hickman were sureties on the bonds of Meyers and Johnson, respectively. An answer was filed by Johnson, Meyers and Hickman jointly, and a separate one by the National Surety Company. Various motions and demurrers were presented, and the case finally set for trial for September 9, 1925. On September 5th, plaintiffs and defendants being both duly represented, the court granted the latter the privilege of filing a special demurrer and motion to elect, and the special demurrer was sustained on the ground that an action *ex contractu* had been joined with one *ex delicto,* whereupon plaintiffs moved to dismiss the action as to Hickman and the surety company.

The case came regularly on for trial before a jury, and, after evidence both oral and written had been duly presented by plaintiffs, on motion of defendants the jury returned an instructed verdict for them. After the usual motion for new trial had been overruled, an appeal was taken to this court.

There are three assignments of error which we will consider in their order. The first is that the court should not have allowed defendants to interpose the special demurrer within four days of the time set for trial. Chapter 14 of the Session Laws of 1925 provides that all pleadings or proceedings may, upon leave of the court, be amended at any stage of the action upon such terms as the court may prescribe. It was therefore discretionary with the trial court to allow the special demurrer to be filed, and nothing appears in the record showing such discretion was abused.

The second point raised is that the court should not have sustained the special demurrer, on the ground that an action *ex contractu* against the surety company and Hickman was joined with one *ex delicto*

against Meyers and Johnson. Whether this be error we need not determine, as the record shows plaintiffs after the ruling voluntarily dismissed their action against the surety company and Hickman.

The third and vital assignment is that the court erred in instructing the jury to return a verdict for the defendants Meyers and Johnson. In order that we may consider this assignment intelligently, it will be necessary for us to review certain parts of the pleadings and the evidence. The complaint, after setting up that Meyers and Johnson were bonded real estate dealers, alleges, in substance, that they induced plaintiffs to purchase certain property situated in Phoenix, and belonging then to one Bryant, by the means of certain fraudulent representations and misstatements made by the defendants. It is set up that, when defendants first attempted to sell the property to plaintiffs, the latter refused to buy it unless it could be immediately resold to some other party for the sum of $5,000, with a cash payment of $500, and the balance at the rate of $40 per month, including interest; that thereafter, and before the deal was consummated, defendants produced a written contract for a sale to one Chenault at such price and terms, reciting that the purchaser had paid $200 down as earnest-money, and that the balance would be paid in accordance with the terms insisted upon by plaintiffs, but that, if for any reason the contract of sale fell through, the seller of the property and defendant Meyers should divide the earnest-money equally between them, and represented that such contract had actually been made as appeared on its face.

Plaintiffs further allege that, relying upon the representations made by defendants in regard to the Chenault contract, they bought the property through defendants at the agreed price of $5,000; that thereafter it appeared that the representations made by

Johnson and Meyers that Chenault had paid $200 earnest-money were false to the knowledge of defendants at the time, and were by them made for the purpose of inducing plaintiffs to purchase the property. Defendants answered by a general denial, and further set up as follows:

"II. That by the contract dated September 26, 1924, and pleaded and set out in full in paragraph IX of the complaint it is provided, among other clauses therein, viz.:

" 'In the event the seller complies with his part of this contract and the purchaser fails to comply with his part of this contract, and then the earnest-money receipted for herein shall be divided equally between the seller and Meyers Investment Company, provided said one-half of said earnest-money does not exceed 5 per cent. of the total consideration.'

"That thereafter, when the purchaser, Chenault, under said contract had failed and refused to comply with his part of the contract, and in October, 1924, the plaintiff Mrs. A. J. Moore demanded of and received from the Meyers Investment Company the one-half of such earnest-money deposited, to wit, $100, for which she gave a receipt in writing.

"Defendants say that by so demanding, receiving and receipting for said sum of $100, the one-half of the deposit provided in said contract of sale with Chenault, they are estopped now to deny there was such sum deposited, or that they were misled or defrauded in any manner in or under that contract. . . . "

Plaintiffs replied to the aforesaid answer, alleging that it did not sufficiently plead an estoppel. The case came on for trial before the court and a jury on the 9th of September. Evidence was offered on behalf of plaintiffs, tending to show substantially the following facts: That, realizing plaintiffs would not purchase the property in question unless they had an immediate assurance of a resale . on the terms above specified, defendants endeavored to sell the

property to one Chenault. After considerable discussion he refused to take it on those terms, but finally defendant Johnson and Bryant offered to rebate the price $200, making it actually cost Chenault $4,800, and to give him an earnest-money receipt showing that he had paid $200 to apply on the nominal purchase price of $5,000, without the actual payment of any money down, whereupon Chenault signed a memorandum of sale, which reads in part as follows:

"Meyers Investment Co.
"Phoenix, Arizona, Sept. 26th, 1924.
"Contract of Sale.

"Received of D. E. Chenault the sum of two hundred dollars, earnest money and part purchase money to close trade or sale of furnished house and lot of the following described property, at the total sum of $5,000.00. All that certain tract or parcel of land lying and being in the county of Maricopa and state of Arizona, described as follows: Lot 47, Bellvadier tract No. 1245 East Moreland tract.

"Terms of sale: Five hundred dollars on delivery of contract, balance assume one certain mortgage of $2,200.00. Contract to be paid at the rate of forty dollars per month or more including interest, until the balance of twenty-three hundred dollars have been paid. . . .

"In the event the seller complies with his part of this contract, and the purchaser fails to comply with his part of this contract, then the earnest money receipted for herein shall be divided equally between the seller and Meyers Investment Company, provided said one-half of said earnest money does not ~~exceed 5 per cent. of the total consideration.~~ Should the seller refuse to comply with his part of this contract, then the seller shall pay Meyers Investment Company, 5 per cent. commission for his services.

"Commission $100.00.
"D. E. CHENAULT, Purchaser.
"MEYERS INVESTMENT COMPANY,
"By —————, Agent."

Bryant gave Johnson $200, which was turned over to Meyers, and this contract was shown plaintiffs. Believing it recited the real facts, they purchased the property from Bryant, paying him in full for his equity therein. Chenault then went into possession of the premises, but later decided he did not wish to go through with the deal and along about the middle of October so informed plaintiffs. Mrs. Moore then interviewed him, and for the first time learned the true facts, and that he had not put up anything at all on the contract. She consulted her attorney, and thereafter collected from defendants the $100 which the memorandum of sale to Chenault said should be paid in case he did not complete the contract, and later brought this action. There was also abundant evidence to go to the jury to the effect that the value of the property at the time of the sale was between $3,000 and $4,000.

The elements of actionable fraud may be stated as follows: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. 26 C. J. 1062. If these factors all appear, a cause of action for fraud will unquestionably exist.

The evidence offered on behalf of plaintiffs shows that they were entitled to go to the jury upon each one of these necessary points. Defendants represented to them that they had a positive resale of the premises for the sum of $5,000, on which $200 had been paid down by the purchaser. That the representation was false as to the payment by Chenault of the $200 earnest-money is not disputed, nor that defendant Johnson, who was Meyers' agent, knew its

falsity. It was unquestionably intended that the plaintiffs should act upon such representations, as a resale on those terms was a *sine qua non* of their purchase. Plaintiffs denied any knowledge of the true situation, and testified to their reliance upon the statements of defendants. That they had a right to rely upon such statements in the respective situations of the parties cannot be disputed, and there is evidence in the record that they were damaged thereby.

The only remaining question is as to the materiality of the false representations. It is contended on behalf of defendants that the Chenault transaction was absolutely *bona fide,* both on their part and that of Chenault, and that the memorandum of sale exhibited to plaintiffs showed on its face Chenault had the option of refusing to complete his contract if he forfeited the earnest-money, so that he did only what plaintiffs knew he had the right to do at the time they purchased the property. So far as the $200 earnest-money is concerned, defendants claim that, since it was actually put up, it was immaterial as to by whom it was deposited; the only interest of plaintiffs being that someone had done so.

We cannot agree that this representation was not a material one. While it is true plaintiffs knew Chenault had the right to refuse to complete the agreement, yet they would naturally and properly presume a man who had $200 of his own money at stake on the completion of a contract would be much more likely to go ahead with it than one who had not a penny to lose, should he fail to carry out his agreement. We think the misrepresentation as to the source of the $200 forfeit was a material one, and therefore all of the elements of fraud were presented by the evidence, and plaintiffs were entitled to go to the jury, unless defendants' plea of estoppel was good.

The essential elements of estoppel in a case like this are that plaintiffs, *with knowledge of the facts,* must have asserted a particular right inconsistent with that asserted in this action, to the prejudice of another who has relied upon their first conduct. An estoppel must be pleaded specially, and with particularity and precision; every essential fact being set forth. 21 C. J. 1247, 1248. It will be seen, on examining the plea of estoppel by defendants quoted above, that there is lacking therein any allegation either directly or by implication that plaintiffs at the time they collected the $100 forfeit under the Chenault agreement had any knowledge that the money had not actually been put up by Chenault himself. Plaintiffs by their reply raised the issue that the estoppel had not been properly pleaded, and we think correctly. The trial court therefore erred in admitting any evidence on that point. However, the evidence, though erroneously admitted, shows clearly and without contradiction that, before plaintiffs received the $100, they were fully advised as to the false representation in regard to Chenault's having put up the money, and that after consultation with counsel they voluntarily applied for and collected it. That they did not realize the legal effect of their action cannot alter the situation. They did know the facts, and ignorance of the law excuses no man from the result of his conduct. Under such circumstances the erroneous admission of the evidence should not cause a reversal of the case, for, if it should be sent back for a new trial, defendants would doubtless amend their plea of estoppel so that the testimony would be admissible, and there would be nothing for the trial court to do but again instruct a verdict in favor of defendants.

We do not think justice requires we put parties to an action to extra expense in order that exactly

the same result may be reached in a more formal manner, especially when the error is merely a technical one of pleading.

For the foregoing reasons, the judgment of the superior court of Maricopa county is affirmed.

ROSS, C. J., and McALISTER, J., concur.