325 P.2d 8l4

Harry T. MAYO and Hazel E. Mayo, husband and wife, Appellants and Cross Appellees,

v.

Harry G. EPHROM and Dorothy M. Ephrom, husband and wife, and Jack M. Rayner and D. Fay Rayner, husband and wife, Appellees and Cross Appellants.

No. 6320.

Supreme Court of Arizona.

May 14, 1958.

Miller & Raineri, Phoenix, Whitney & LaPrade, Phoenix, of counsel, for appellants.

Shute & Elsing, Phoenix, for appellees.

JOHNSON, Justice.

This is an appeal by plaintiffs below from an order granting defendants a new trial. Defendants, Harry G. Ephrom and Dorothy M. Ephrom, husband and wife, and Jack M. Rayner and D. Fay Rayner, husband and wife, cross-appealed from the effect of said order as denying their motion for a judgment notwithstanding the verdict by operation of law.

The complaint alleged fraud was perpetrated by defendants in the sale of a 320-acre farm to plaintiffs near Maricopa, Pinal County, Arizona. The purchase price of $80,000 was to be paid as follows: $11,000 in cash, an assignment of a contract of sale of property in California valued at $11,870.20, and the balance of the purchase price of $57,129.80 was evidenced by a note bearing interest at 5% to be paid in annual installments of $8,161.40 or more, on or before February 1st of each year commencing with February 1, 1953; and the note was secured by a mortgage on the farm executed by plaintiffs. The defendants filed a counterclaim against plaintiffs to foreclose the mortgage.

The case was tried before a jury and a verdict was rendered in favor of plaintiffs in the sum of $70,000. The trial court directed a verdict in favor of defendants on their counterclaim and found the amount due was the sum of $75,732.28, together with the sum of $17 for title expense and the sum of $7,574.93 as and for attorneys' fees. The trial court ordered judgment

for the counterclaimants in the sum of $13,324.21, being the difference between the verdict for plaintiffs and the amount the trial court found as being due counterclaimants, and ordered that a foreclosure be had for this amount. The order for judgment was for the difference in the amount of verdicts in the sum of $13,324.21. The verdict of the jury in favor of plaintiffs was in excess of the prayer for damages alleged in the complaint. The defendants moved for judgment or in the alternative for a new trial. After argument at the hearing of the motions the trial court denied a motion of plaintiffs for permission to amend the prayer of the complaint for damages to conform to the evidence, and entered the following order:

"It is ordered that the amount of the verdict which is in excess of $48,581.-10, to-wit: $21,418.90, be remitted within ten days, and if so remitted, then motion for new trial is denied. Order if the sum of $21,418.90 is not remitted within ten days, then motion for new trial is granted."

Plaintiffs did not remit and a formal written order was entered granting a new trial on all the issues on the following grounds, as well as others; that the jury returned a verdict in an excessive amount, and that the verdict was the result of passion and prejudice.

Plaintiffs' assignments of error are briefly summarized as follows: (1) the verdict for plaintiffs was fully sustained by the evidence; (2) the trial court erred in directing a verdict on the counterclaim; (3) error was committed in allowing attorneys' fees because if fraud was committed attorneys' fees could not be collected, or in any event the jury should have found the amount due, if any were due; and (4) the court erred in granting a new trial on all the issues for if a new trial was warranted it should have been limited solely to a question of damages. Defendants, in support of their cross-appeal, assigned as error the refusal of the trial court to grant their motion for judgment for the reason the evidence is insufficient to prove that the acts of the defendants constituted fraud.

The grounds set forth in the formal order granting the new trial are causes warranting the granting of a new trial as provided in Rule 59(a), Rules of Civil Procedure, 16 A.R.S. It is a well-settled rule of law that the granting of a new trial is largely within the discretion of the court, and that the appellate court will not disturb the ruling except for an abuse of discretion. The discretion in this sense is a legal discretion, based upon reason and law. Where the showing for a new trial is insufficient both in form and substance there is no discretion to be exercised. Sharpensteen v. Sanguinetti, 33 Ariz. 110, 262 P. 609. See, also, Southern Pac. Co. v. Shults, 37 Ariz. 142, 290 P. 152; Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 63

173

P.2d 193; Zevon v. Tennebaum, 73 Ariz. 281, 240 P.2d 548; Kotsonaros v. State of Minnesota, 79 Ariz. 368, 290 P.2d 478.

In Sadler v. Arizona Flour Mills Co., 58 Ariz. 486, at page 490, 121 P.2d 412, at page 413, we stated:

"The granting of a new trial is different from an order refusing a new trial, for in the former the rights of the parties are never finally disposed of as in the latter they may be. The courts accordingly are more liberal in sustaining an order for new trial than where it is denied."

■ We have carefully examined the transcript of the evidence to determine whether the trial court abused its discretion in entering the order for a new trial. The record is replete with improper remarks by the plaintiff, Harry T. Mayo, and his attorney. A reference to a few of these remarks will suffice. During argument on the admissibility of evidence Mayo volunteered the following in the presence of the jury: "I didn't want my wife to know I was swindled out of my life savings, if you want to know the truth." Again, when the court sustained an objection, plaintiff Mayo said: "I think the jury should get the whole story." At another time defendants objected to the testimony of a witness and plaintiffs' attorney said: "There is an attempt to stop this witness from testifying." In the closing argument defendants' attorney objected to the rebuttal argument.

The court admonished the attorney and defendants finally withdrew the objection. Then plaintiffs' attorney said to the jury: "I am going to say to you, members of the jury, this is just a trick to get me off this argument." The examples of the improper remarks are but a few of the many which occurred during the course of the trial. In most instances the trial court gave a curative instruction to the jury. Whether a curative instruction cures the harm caused by the impropriety of a remark is debatable. Isolated prejudicial remarks are not usually treated by the courts as reversible error where the court properly admonishes the jury to disregard the same. However, where, as in this case, there are innumerable improper remarks during the course of the trial, we cannot find that the trial court abused its discretion in considering the cumulative effect thereof as prejudicial.

■ Plaintiffs contend that where the court orders a remittitur on account of excessive damages or a new trial if the excess is not remitted, then the new trial should be confined to damages and not ordered on all the issues. There would be merit to this argument if the order of the trial court granting a new trial was based solely on excessive damages. But as previously pointed out the order granting the new trial was also based upon the ground that the verdict was the result of passion and prejudice.

■ It is well settled that "* * * If it appears manifest that the jury were actuated by prejudice or passion its verdict may not stand; * * *." Miller v. Condon, 66 Ariz. 34, 182 P.2d 105, 109. In Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821, 823, we reaffirmed the correct rule of law laid down in Southern Pacific Co. v. Tomlinson, 4 Ariz. 126, 33 P. 710, 711:

"'* * * Of course, if it is apparent to the trial court that the verdict was the result of passion or prejudice, a remittitur should not be allowed, but the verdict should be set aside. * * *'"

It therefore follows that the trial court, after concluding that the verdict was the result of passion and prejudice, could not order a remittitur but could only grant a new trial.

We are of the opinion, and so hold, from an examination of the entire record of this case, that the trial court did not abuse its discretion in entering the order granting a new trial on all the issues of the complaint and answer, based on the cumulation of prejudicial remarks. We hold the prejudicial effect of the improper remarks went both to the question of damages as well as to the issue of liability for the alleged fraud. Southern Pacific Co. v. Gastelum, 36 Ariz. 106, 283 P. 719; Hallford v. Schumacher, Okl., 323 P.2d 989.

■ In view of the fact that this case will be retried we will consider the following contentions of plaintiffs: (a) that the trial court erred in allowing full attorneys' fees computed upon the entire amount found to be due on the note secured by the mortgage, and (b) that it was error for the trial court to direct a verdict in favor of defendants on their counterclaim to foreclose the mortgage. Defendants admit in their brief that where fraud is a defense to an action on a note, attorneys' fees should be computed only on the amount recovered by the holder of the note. This is a correct statement of the rule of law as the case of Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L.R.2d 668, is controlling. In the instant case the trial court improperly allowed attorneys' fees computed upon the full amount found to be due on the note. Counterclaimants are only entitled to attorneys' fees computed on the difference between the verdicts, i. e., on the sum found due on the note less the amount of the verdict, if any, rendered for plaintiffs in the fraud action.

■ Plaintiffs' other contention, as stated above, pertains to the trial court directing a verdict in favor of defendants on their counterclaim to foreclose the mortgage. Plaintiffs urge it was error to withdraw this issue from the jury. We held in Haynie v. Taylor, 69 Ariz. 339, 213 P.2d 684, that in the trial of an equity case, where a jury has been demanded, the court may not withdraw the determination of

controverted facts from the jury and that the case may only be withdrawn from their consideration where there is no controverted issue of fact. The trial court was justified in finding there were no controverted issues of fact as to the validity of the mortgage or as to the amount due thereon, and the trial court properly directed a verdict on the counterclaim and this issue need not be retried. However, in the event of a verdict in favor of the plaintiffs in the fraud action, the trial court shall render judgment in favor of the party entitled thereto for the difference in the amount of such verdict, if any, and the amount due the defendants on the judgment foreclosing their mortgage.

Defendants cross-appealed on the ground the trial court erred in refusing to grant defendants' motion for a directed verdict for the reason that the evidence is insufficient to prove that acts of defendants constituted fraud.

We have previously defined the elements of actionable fraud. Moore v. Meyers, 31 Ariz. 347, 253 P. 626; Stewart v. Phoenix Nat. Bank, 49 Ariz. 34, 64 P.2d 101. The complaint alleges the necessary elements constituting actionable fraud. Plaintiffs' action for fraud is based upon defendants' alleged representation that the small well, one of two wells on the farm, would produce 1000 gallons of water per minute, and that there was enough water from both wells to irrigate the entire farm. At the time the sale was being negotiated there was no pump on the small well. Defendants stated the well had been tested and had the represented capacity. Plaintiff, Harry T. Mayo, informed defendants he did not have the necessary money to test the well. Defendants advised him that he could verify the capacity with Mr. Taylor, the well driller. The well driller subsequently verified the capacity of the small well. After purchasing the farm plaintiffs put a pump on the small well. The well was pumped and produced water for three minutes. It was tried again and failed to yield water. The well was unsuccessfully worked on for several weeks and was finally abandoned. As a result of the lack of water, plaintiff Harvey T. Mayo testified he raised only 120 acres of cotton instead of the 300 acres planted.

Defendants contend that because plaintiffs contacted the well driller they resorted to a source of information other than the representation made in order to ascertain the facts, and cannot claim that they relied upon the representation so made. It is a correct rule of law that if the complaining party resorts to other sources of information other than the representation to ascertain the facts and relies thereon, he is not in a position to claim he relied upon the representation. Imperial Assur. Co. of New York v. Joseph Supornick & Son, 8 Cir., 184 F.2d 930.

Where, however, a representee makes only a partial investigation and relies in part upon the representations of the adverse party, and is deceived by such representations, it is generally recognized that he has a right to rely, and may maintain action for such deceit. 37 C.J.S. Fraud § 34, p. 281; 23 Am.Jur. 952, Fraud and Deceit, § 147; Rummer v. Throop, 38 Wash.2d 140, 231 P.2d 313.

Plaintiff Harry T. Mayo testified as follows:

"Q. Is that correct? Now, was this—the matter you related to us is the extent of your investigation of this well? A. The extent of my investigation was what Ephrom and Rayner told me and what Mr. Taylor told me.

"Q. Then, actually, there was no investigation at all? You just relied on what the sellers and well drillers told you? A. Who else are you going to rely on?"

The issue of whether the plaintiffs relied upon the representations of defendants or upon the information obtained as a result of their investigation in talking with the well driller was a question of fact properly submitted to the jury.

Defendants also contend that: (1) the falsity of the representations was not established, and (2) the defendants' knowledge of the falsity was not established by the evidence. There is evidence in the record that the defendant, Harry G. Ephrom was present when the well driller, Francis M. Johnson, ceased drilling the small well after encountering hard rock at a depth of 300 feet and when the well only produced enough water for domestic use. The knowledge of defendants as to the lack of capacity of the well is corroborated by the testimony of Mr. Doyle Nester, who testified:

"Mr. Raineri: Q. Just tell us all the conversation between you and Mr. Ephrom that time, as best you remember. A. We were discussing using that large tank. At that time I had a 250 gallon tank there, I believe, used for temporarily."

"Mr. Elsing: Just relate the conversation as well as you can, saying I said this and he said this."

"Mr. Raineri: Q. Don't mention the tanks, just what was said; the words Ephrom used, tell us that, about the well. A. That's what we was talking about."

"The Court: Mention it. Say what you and he said. A. He said it wasn't necessary to set the big tank up because the well wasn't producing, could only be used as a domestic well, and to use the little tank there temporarily. That was the conversation that we had there at that time."

Much confusion occurred in the trial of this case as to plaintiffs' prayer for damages as well as to the measure of damages. After the complaint was read to the jury, and after testimony was introduced, the plaintiffs made a trial amendment, relinquishing their claim for damages during the years 1953 and 1954, and adding a claim for crop damages for 1952. Prior to the retrial of this case the trial court should require plaintiffs to file a written amendment to the prayer for damages in the complaint.

Judgment affirmed.

UDALL, C. J., and WINDES, PHELPS, and STRUCKMEYER, JJ., concurring.