327 P.2d 1023

F. Preston SULT, Special Administrator
of the Estate of James A. Burrell, deceas-
ed, and Ruth M. Burrell, Appellants,

v.

Adolf BOLENBACH and Ena Bolenbach,
husband and wife, Appellees.

No. 6268.

Supreme Court of Arizona.

July 16, 1958.

Ellis & Sult, Eloy, Kramer, Roche & Perry, Phoenix, Pence, Johnson, Downing & Trella, Covina, Cal., Norvald T. Ulvestad, Los Angeles, Cal., of counsel, for appellants.

Reed, Wood & Platt, Coolidge, Nat Rosin and Joseph Ostrow, Los Angeles, Cal., of counsel, for appellees.

STRUCKMEYER, Justice.

This action was brought by Ruth M. Burrell and by F. Preston Sult, Special Administrator of the Estate of James A. Burrell, deceased, as plaintiffs against Adolf Bolenbach and Ena Bolenbach, his wife, to recover upon a promissory note in the sum of $37,500 and to foreclose a realty mortgage securing its payment. Defendants answered, asserting fraud in the procurement of the note and mortgage, and counterclaimed for damages suffered. Trial resulted in a verdict and judgment for defendant counterclaimants.

In 1952 the defendants, who were owners of an orange grove in California of the agreed value of $82,500, entered into a transaction with James A. Burrell, now deceased, and Ruth M. Burrell, his wife, whereby defendants transferred to them their orange grove and in addition paid $45,000 in cash, assumed a realty mortgage of $60,000, a crop loan of $45,000, and delivered their promissory note together with a further mortgage in the sum of $37,500, all totalling $270,000, for farm lands in Pinal County, Arizona, owned by the Burrells. After the Bolenbachs entered into possession of the Arizona lands, they refused to pay the $37,500 note and this action was commenced. Judgment was entered that the plaintiffs take nothing by their complaint and that the note and mortgage upon which suit was brought be surrendered to defendants and that defendants recover $1,500 and their costs. Other appropriate relief was ordered to conform to these basic elements of the judgment.

The plaintiffs' principal assignment of error is an assertion that fraud was not established by clear and convincing evidence for the reason that the defendants relied upon their own inspection and examination of the property and did not rely upon any representation of the Burrells. It is the settled rule in this jurisdiction that fraud must be established by clear and convincing evidence, Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866; In re McDonnell's Es-

tate, 65 Ariz. 248, 179 P.2d 238; Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741; Brazee v. Morris, 68 Ariz. 224, 204 P.2d 475; Honk v. Karlsson, 80 Ariz. 30, 292 P.2d 455; and that it has certain necessary elements, Sims Printing Co. v. Kerby, 56 Ariz. 130, 106 P.2d 197; Rice v. Tissaw, supra; In re McDonnell's Estate, supra; Koen v. Cavanagh, 70 Ariz. 389, 222 P.2d 630; Wilson v. Byrd, 79 Ariz. 302, 288 P.2d 1079, one being that the complaining party must rely upon the fraudulent acts or representations. The plaintiffs' case rests upon the admitted fact that the defendants made two inspections of the property prior to the consummation of the deal and they urge that the effect of making an unhindered examination was to release the seller from liability for any representation which may have been made. On the other hand, defendants argue that it is only where a party to whom a false representation is made has the means for determining its truth or falsity and after investigation learns that the representation is false that he is precluded from asserting that he relied thereon.

While there was a number of allegations of misrepresentations pleaded upon which proof was elicited, we think the representations about the quantity of water available for irrigation are sufficient to support the jury's verdict and the judgment. A party is not required to prove that all the specifications of fraudulent representations are true; a single representation of mate-

rial fact upon which the party had a right and did rely to his damage is sufficient to afford relief. Harris v. Miller, 196 Cal. 8, 235 P. 981.

In the instant case the evidence discloses that decedent James A. Burrell listed the real property with a real estate agent and at Burrell's instigation the agent typed off a description of the Arizona ranch which specified that "1 20″ well * * * pumps 10″ stream estimated at from 2,300 to 2,500 gallons per minute * * *" and that the capacity of a second well was "500 gallons per minute" and that Burrell held "State of Arizona appropreation right to first 10,000 gal. per minute from Santa Cruz River and Quayote Wash." These statements were transmitted to the Bolenbachs as representations of the character of the Arizona ranch. Later they were confirmed in conversations between the Bolenbachs and the Burrells.

■■ The evidence at the trial established without equivocation that the large well actually produced only 1,500 to 1,600 gallons per minute and the small well 300 to 340 gallons per minute, and that the representation of prior appropriation for 10,000 gallons of water per minute from the Santa Cruz River and Quayote Wash was false for the reason that Burrell had made only an application for an appropriation which even if granted and perfected would not be a first and prior right but would be junior and inferior to many prior and perfected appropriations already in existence. Moreover, such appropriation, if and when perfected, would be of little value because of the erratic and unreliable flow of the Quayote Wash, and in addition, the Santa Cruz River was some ten miles from the property. Other testimony developed that while the ranch was planted to 600 acres of cotton, the water supply available was sufficient for only approximately 200 acres. The representations as to the capacity of the wells and the quantity of water available were material and fraudulent, Mayo v. Ephrom, 84 Ariz. 169, 325 P.2d 814, and the proof thereof clear and convincing.

■ As stated, the gist of the plaintiffs' case was that the Bolenbachs undertook to investigate for themselves the matters concerning which the representations had been made. We said in Perkins v. Gross, 26 Ariz. 219, 224 P. 620, 621:

"* * * where a buyer examines the thing purchased, or has the opportunity of doing so, the seller is thereby released from liability on account of any representations which may have been made.",

but that

"While this statement of the rule may be applicable to some transactions, it is not universally correct. * * *"

In our recent case of Mayo v. Ephrom, supra, we recognized that where only a partial investigation is made and a party relies in part upon the representations and is de-

ceived by such representations, the action may be maintained. In the instant case, while Bolenbach did visit the Arizona ranch prior to its purchase, he had little experience in the growing of cotton and none in irrigated country. He testified:

"Q. Mr. Bolenbach, in September of 1952, did you ever prior to that time have any experience with the growing of cotton in irrigated country? A. No.

"Q. Had you ever grown any cotton? A. Yes, a little.

"Q. When was that? A. Oh, about thirty-eight, forty years ago.

"Q. Where was that? A. In Arkansas.

"Q. And how big an acreage did you grow? A. Oh, I had about thirty or thirty-five acres."

The testimony further developed that Bolenbach saw the pumps in operation but that a person without experience would be unable to judge the amount of water delivered.

Defendants took possession of the ranch in the fall of 1952 after the cotton crop had been raised, and it was not until the following spring when he was endeavoring to finance the 1953 planting that Bolenbach became aware of the true situation concerning the water. He also testified:

"Q. After you made your check down there did you still believe the representations Mr. Burrell made? A. More firmly I believed in him that I did

before because it looked very nice to me.

"Q. Did you rely on those representations? A. Why sure.

"Q. In making the purchase? A. I was convinced that he was right.

"Q. And you believed those representations? A. Yes, * * *.

"Q. And that is why you bought the place? A. That is why I bought the place."

The nature of this transaction is such that the representations as to the quantity of water available for raising crops were highly material and if untrue and relied upon by the complaining party must necessarily go to the heart of the transaction.

■ Appellants have assigned as error portions of the trial court's instructions to the jury which embrace the defendants' requested instructions Nos. 4 and 7, and a part of the instruction given by the court which neither the plaintiffs nor the defendants requested. To that portion of the trial court's instruction which was given without the request of either party, plaintiffs made no objection. Since no objection was made at the time it was given, plaintiffs will not now be heard to complain. Schmerfeld v. Hendry, 74 Ariz. 159, 245 P.2d 420.

■ The plaintiffs' objection to instruction No. 4 was "for the reason that the same is an incorrect statement of the law applicable to the facts in said case" and to No. 7 "for the reason that the same is not a cor-

356

rect statement of the law, is inapplicable to the facts as shown by the evidence in this case, and the same is prejudicial to the rights of the plaintiffs." The objections are clearly insufficient under Rule 51(a), Rules of Civil Procedure, 16 A.R.S., which provides that a party must state *distinctly* the grounds for his objection. An objection of a very similar nature to these was held insufficient by this court in Schmerfeld v. Hendry, supra, and see Apperwhite v. Illinois Central Railroad Company, 8 Cir., 239 F.2d 306; American Fidelity & Casualty Company v. Drexler, 5 Cir., 220 F.2d 930.

Judgment affirmed.

UDALL, C. J., and WINDES, PHELPS, and JOHNSON, JJ., concurring.