485 P.2d 280

**MOBIL OIL COMPANY, Appellant,**

v.

**Fred E. FRISBIE and Helen Frisbie, his wife, Appellees.**

**No. I CA–CIV 1209.**

Court of Appeals of Arizona, Division 1, Department A.

May 24, 1971.

Rehearing Denied July 2, 1971.
Review Denied Sept. 21, 1971.

558

Ryley, Carlock & Ralston, by John C. Ellinwood, Phoenix, for appellant.

Hughes, Hughes & Conlan, by Coit I. Hughes, Phoenix, for appellees.

DONOFRIO, Judge

This is an appeal by Mobil Oil Company from a judgment against it in favor of appellees Fred E. Frisbie and Helen Frisbie, his wife.

The Frisbies (plaintiffs) filed an action against Mobil Oil (defendant) to recover actual and punitive damages for alleged fraudulent misrepresentations made by Mobil Oil to Fred Frisbie that induced the Frisbies to purchase the business and certain properties from G. R. Creasman, a consignee of Mobil Oil.

The defendant answered the complaint in fraud and counterclaimed against plaintiffs for materials and products furnished to them.

The case was tried to a jury that returned a verdict for plaintiffs in the sum of $30,000 actual damages and $17,500 punitive damages, and for plaintiffs on defendant's counterclaim. Defendant appeals from the judgment entered on the verdict and from the denial of its post-trial motions.

For convenience we shall refer to the Frisbies as plaintiff and Mobil Oil as defendant.

At the outset certain pertinent facts should be stated. Plaintiff and his wife purchased a bulk oil plant and Mobil Oil consigneeship in the Miami, Arizona area through defendant corporation. Defendant's consignee prior to plaintiff was G. R. Creasman who operated as the Mobil consignee from 1935 to 1965, and established Mobil service stations on the San Carlos Reservation and most of the Mobil outlets in the Globe-Miami area. Creasman wished to retire and defendant stated that a new consignee would not be approved unless Creasman's interest was bought out.

About August 17, 1965, plaintiff applied to defendant for the consigneeship and began negotiations to buy Creasman's interest. Plaintiff testified that during these negotiations defendant's representative stated that the business would make plaintiff $1000 per month. Plaintiff also testified defendant told him to disregard the commissions defendant had been paying Creasman because plaintiff's commissions would be raised due to the high price plaintiff was paying for the business.

On September 9, 1965, plaintiff purchased Creasman's interest for $23,500, plus $8,000 for Creasman's stock of TBA (tires, batteries and accessories). Thereupon plaintiff was presented a consignee contract by defendant for one year, to begin September 15, 1965. The contract was executed by plaintiff. Plaintiff had objected to the one-year clause as not being satisfactory for someone purchasing a business, and testified that defendant's representative told him not to worry because defendant had never cancelled out a consignee because of the one-year term of the contract.

On September 15, 1965, plaintiff began operating as defendant's consignee. At defendant's suggestion he received a $4,000 credit authorization for TBA. In December of the same year defendant arranged a further TBA credit of $10,000. This was done in spite of the fact that plaintiff was alleged to be in arrears as to monthly payments owed defendant. During the same month defendant (Mobil) began withholding plaintiff's gasoline and commission checks and continued to do so through May 1966.

In February 1966 plaintiff reported to defendant that one of defendant's gasoline pumps was leaking gasoline belonging to plaintiff. Defendant inspected the pump and after concluding that new packing was needed to cease the leakage, decided to replace the pump rather than defray the $50.00 cost necessary for repairs. The pump, however, was not replaced until April. During this period it leaked gasoline costing in excess of $900. Plaintiff was reimbursed for this loss, but defendant did not credit it to plaintiff's account until August of the same year.

Plaintiff secured the negotiations for a station at Salt River, Arizona, to be switched from Shell to Mobil, conditioned upon the station owner's receiving a $10,000 loan from defendant. Defendant's sales manager stated the loan was approved for $11,000, then gave the Salt River station owner a check for $500 to start dirt removal. Defendant's Legal Department, however, subsequently refused the $11,000 loan, limiting the amount to $6,000. Plaintiff began delivering gas to that station, but the Salt River owner refused to pay for the gas delivered until such time as the remaining $5,000 loan was approved. Plaintiff testified that he was never notified to stop delivering gas to this station, even though the Salt River station's gasoline credit was delinquent. Defendant subsequently claimed plaintiff's gasoline account to be delinquent, but the record

shows plaintiff had paid defendant for all gasoline received on credit, except that amount the Salt River owner refused to pay.

On June 6, 1966, Mobil removed plaintiff's entire TBA stock for delinquency. From December through May the defendant withheld plaintiff's gasoline and commission checks totaling $5,151.94. The record shows, however, that plaintiff had paid $5,372 into the account, but was credited with paying only $83.97. Then, beginning on June 29, 1966, twenty-three days after Mobil had retaken possession of the TBA, the previously uncredited payments were applied to plaintiff's account.

On August 15, 1966, plaintiff was notified that his consigneeship would expire September 15, 1966, and would not be renewed. The reasons given for not renewing the contract were that the plaintiff was not a satisfactory consignee, was failing as a businessman, was delinquent in his TBA account, was in violation of the deliveries of gasoline on credit, and was unsuitable because of the unhappy relationship between plaintiff and Mobil's representative.

During the time plaintiff was operating as defendant's consignee the evidence shows that plaintiff was never making $1000 a month, and in fact that he could not make a living operating the business. As to the alleged representation that plaintiff's commissions were to be raised from what the previous consignee had received, the evidence shows that some of the commissions were raised, but when analyzed as a whole, they were lower than those received by the previous consignee.

Defendant in its brief presents the following questions for review:

1. Did the trial court err in refusing to direct a verdict for the defendant at the close of plaintiff's case on the ground that plaintiff failed to make out a prima facie case proving the nine elements of fraud by clear and convincing evidence?

2. Did the trial court err in admitting plaintiff's documentary evidence not listed on any pretrial statement or memoranda over defendant's objections?

3. Did the trial court err in denying defendant's post-trial motions for judgment notwithstanding the verdict, for new trial, and for reducing the amount of damages?

4. Did the trial court err in instructing the jury on the issues of fraud and damages?

We shall treat these questions under the four headings that follow.

## ERROR IN DIRECTING VERDICT

■ The defendant's first contention is that the trial court erred in not directing a verdict in defendant's favor. Defendant moved at the close of plaintiff's case and again at the close of all the evidence for a directed verdict. The trial court denied defendant's first motion for a directed verdict and defendant proceeded to put on its case, therefore this Court is required to consider all the evidence admitted during trial to decide whether the elements of fraud were present. Lillywhite v. Coleman, 46 Ariz. 523, 52 P.2d 1157 (1935).

The law in Arizona is well settled as to when a motion for a directed verdict should be granted or denied. Brand v. J. H. Rose Trucking Company, 102 Ariz. 201, 427 P.2d 519 (1967), states:

"When a motion for a directed verdict is made by a defendant, the trial court must consider all the competent and relevant evidence introduced tending to sustain the plaintiff's claim, whether offered by plaintiff or defendant, and all reasonable inferences drawn therefrom in the strongest light against the defendant. If thus considered the evidence and inferences are sufficient to support a verdict, the motion is properly overruled. (citations omitted)" 102 Ariz. at 204, 427 P.2d at 522

Our Supreme Court in Davis v. Weber, 93 Ariz. 312, 380 P.2d 608 (1963), further recognizes that:

"* * * A defendant's motion for a directed verdict admits the truth of whatever evidence the opposing party has introduced and any inferences reasonably drawn therefrom. Joseph v. Tibsherany, 88 Ariz. 205, 354 P.2d 254. On such a motion the evidence must be treated and viewed in a light most favorable to the party against whom the motion is sought. Mutz v. Lucero, 90 Ariz. 38, 365 P.2d 49. The motion should be granted only where the evidence is not sufficient to support a contrary verdict or so weak that a court would feel constrained to set aside such a verdict on a motion for new trial. (citations omitted)" 93 Ariz. at 314, 380 P.2d at 609

In Arizona, to recover for actionable fraud, nine elements must be established. These nine elements as set out in Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927), are:

"* * * (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. 26 C.J. 1062. If these factors all appear, a cause of action for fraud will unquestionably exist." 31 Ariz. at 354, 253 P. at 628

The grounds of defendant's attack on the trial court's denial of the directed verdict are: (1) there was no representation of a present or past fact; (2) there was no proof the projection was false or inaccurate; (3) there was no proof defendant's representative knew the projection was false or inaccurate; (4) that it was not a representation of fact; (5) that plaintiff had no right to rely because all figures were available. We find, however, weighing the evidence most favorably in support of the judgment, that there was sufficient evidence as to each of the nine elements of fraud to submit to the jury the question of defendant's liability.

Plaintiff's evidence (among other alleged misrepresentations which we do not deem necessary to this discussion) is that plaintiff was told by a representative of defendant's company that the business would make plaintiff $1000 a month. Defendant contends this statement is a "guesstimate", an opinion as to a future fact. Defendant bases this argument on Han v. Horwitz, 2 Ariz.App. 245, 407 P.2d 786 (1965), which states that if the alleged misrepresentation does not relate to a fact that presently exists or has existed in the past, or if it is only a guess on the part of the speaker, it is not actionable fraud.

We agree that there may be evidence and some question that this alleged misrepresentation related to a future fact, but there is also a great quantum of evidence that this statement related to a present fact. We cannot overturn the decision of the trial court simply because of a conflict; this is a fact question for the jury to decide. Apache Railway Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142 (1945). There was sufficient evidence for the jury to conclude that the alleged statement of $1000 a month was based on an increase of commissions from an existing business. From the evidence presented, we believe it reasonable that the jury could conclude that defendant's representative was capable of predicting what the plaintiff would make per month as the new consignee. The representative had worked for many years with Mr. Creasman's account and was basing his statement on that account's business records. At the time the alleged statement was made defendant had computed the commissions plaintiff was to receive, and therefore knew whether the plaintiff would make $1000 per month as defendant's consignee.

Defendant's contention that there was no proof the projection was false or inaccurate is likewise untenable. Defendant

claims that the $1000 per month statement was based on a projection of 125,000 gallons a month, and that discounting a bid to supply 20,000 gallons a month to one of the mines, which account defendant lost in January 1966, the statement was accurate. From an examination of the evidence, taking the commissions due to plaintiff minus plaintiff's expenses, which defendant was aware of, and adding to that figure the diesel account which was lost, the total is not $1000 per month. It is true that the $1000 per month figure was an approximation of what plaintiff would gross per month from the business, but we are unable to agree to the argument that the $1000 per month statement was to represent gross income per month rather than net income per month. This again was a question of fact properly left to the determination of the jury. It would have been error for the trial court to have directed a verdict on this point.

Defendant also contends there was no proof defendant's representative knew the projection was false or inaccurate. Having previously discussed this point it is necessary only to restate that defendant's representative had the benefit of Mr. Creasman's records when making the $1000 per month statement. The representative had serviced this area for approximately six years and had computed the commissions to be paid to the plaintiff. These are facts from which it can be established that defendant's representative knew the projection to be false or inaccurate.

Defendant's fourth contention relating to error by the trial court in not directing a verdict is that the plaintiff could not be ignorant of its falsity or rely on its truth because it was not a representation of fact. As we understand defendant's contention, this is a representation of merely opinion and not fact. The law in Arizona, as held in Pacific Gas Etc. Co. v. Almanzo, 22 Ariz. 431, 437, 198 P. 457, 459 (1921), states:

"* * * It is true as a general proposition that the expression of an opinion, which is understood to be only an opin-

ion does not render one liable for fraud. (citations omitted) There are many exceptions to this general rule, however, for 'it is often impossible to determine, as matter of law, whether a statement is a representation of a fact, which the defendant intended should be understood as true of his own knowledge, or an expression of opinion, and when such is the case the question is one for the jury.' (citations omitted) 'Each case must in a large measure be adjudged upon its own circumstances.' (citations omitted)"

Therefore, the question as to whether defendant's statement was mere opinion, a "guesstimate", or fact was properly left to the determination of the jury.

The final contention that plaintiff had no right to rely because all figures were available to plaintiff is another issue with which we are unable to agree. The argument is that since plaintiff had Mr. Creasman's gallonage reports, plaintiff was required to do his own investigation to determine what amount of money plaintiff would make per month as the new consignee.

Plaintiff admits looking at Mr. Creasman's gallonage reports, and if plaintiff's commissions were not to have been changed from that received by the prior consignee, plaintiff may not have had a right to rely. The commissions that plaintiff received, however, were changed from what the defendant had given Mr. Creasman. A portion of the commissions was raised, and another portion was lowered. Also, plaintiff testified that he was told to disregard what defendant had been paying Mr. Creasman because plaintiff's commissions would be raised due to the high price plaintiff was paying for the business.

We do not see how plaintiff can be required to rely on his own investigation of Mr. Creasman's business when there was such a variance between the commission amounts paid to Mr. Creasman and those paid to plaintiff. It was the jury's function to weigh plaintiff's statement that he was told to disregard Mr. Creasman's com-

mission figures, and upon the jury's believing this testimony credible, we feel it could only conclude that plaintiff did have a right to rely on defendant's projection.

Even though not crucial to the instant case, since we have determined the trial court could validly ascertain there was a right to rely, the trend of the law in fraud cases is to the effect that partial investigation does not always negate the right to rely. Mayo v. Ephrom, 84 Ariz. 169, 325 P.2d 814 (1958). There, the Arizona Supreme Court said:

> "Where, however, a representee makes only a partial investigation and relies in part upon the representations of the adverse party, and is deceived by such representations, it is generally recognized that he has a right to rely, and may maintain action for such deceit. (citations omitted)" 84 Ariz. at 176, 325 P.2d at 818

The instant problem can be likened to that case because here, even though plaintiff made a partial investigation, he was unable to conclude from the figures before him what he would make per month as the consignee, and was forced to rely upon the alleged representation by defendant's employee. If the jury believed plaintiff's alleged statement relating to the matter of $1000 per month, it can easily be deduced that plaintiff was deceived.

## DOCUMENTARY EVIDENCE NOT ON PRETRIAL STATEMENT

Defendant argues that the trial court erred in admitting over defendant's objections plaintiff's documentary evidence not listed on any pretrial statement or memoranda. This documentary evidence admitted over objection consisted of cancelled checks paid by plaintiff to defendant and defendant's commission vouchers and sales summarizations showing sales commissions withheld and credited to plaintiff's TBA (tires, batteries and accessories inventory) for the months of January through July 1966.

Defendant relies on Rule 16(c), Rules Relating to Maricopa County, Uniform Rules of Practice of the Superior Court, 17 A.R.S. (Supp.1970–71), and Rule 6 (b), Uniform Rules of Practice, 17 A.R.S. (Supp.1970–71). These rules, when jointly applied, state simply that evidence not on the pretrial statement can be admitted for only (1), impeachment purposes or (2), when the trial judge believes it to be in the interest of justice.

From the record it is not clear for what reasons the trial court admitted this documentation, but it is evident that these exhibits were admissible at least for impeachment purposes. Defendant's district sales manager testified that plaintiff had not made any payments on his TBA account. Plaintiff's checks and defendant's documentation were admissible for impeachment purposes to controvert these statements. Defendant's district sales manager subsequently changed his testimony and stated that payments had been applied to plaintiff's account, but this did not change the fact that this documentation was still admissible for the purpose of impeaching the sales manager's prior statement. Also, even though this documentation did not appear on the pretrial statement of April 1, 1969, it was marked for identification and left with the trial court on the morning of April 4, 1969, three days prior to trial. Defendant's counsel appeared in the trial court that morning to quash a subpoena duces tecum, but argues that no notice of the deposit of the exhibits was given to defendant's counsel at that time. The record is silent as to whether there was a notice.

In any event, we see none of these exhibits to be prejudicial, "surprise exhibits", as defendant contends. From the evidence we see no basis upon which to rule that the trial court erred.

## ERROR IN DENYING POST-TRIAL MOTIONS

Defendant urges that the trial court erred in not granting its post-trial motions

for judgment notwithstanding the verdict and for new trial. The trial judge disagreed with these contentions when he denied the motions, and after a review of the record we find sufficient evidence to support the ruling of the trial court.

Defendant also argues that the trial court should have granted plaintiff's motion for reducing the amount of damages by at least $17,500, the amount of punitive damages. The case of Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966), a case dealing with fraudulent representations, succinctly states:

"The amount of an award for punitive damages being a matter of discretion of the trier of fact, such award will not be disturbed unless it be so unreasonable in regard to the circumstances of the case as to show the influence of passion or prejudice." 101 Ariz. at 341, 419 P.2d at 520

The defendant does not argue any influence of passion or prejudice, and we do not find the award to be unreasonable or disproportionate in relation to the actual damages. Nielson, supra.

## JURY INSTRUCTIONS

Defendant contends the trial court erred in two instructions to the jury. The first instruction in question, relating to fraud, states:

"You are instructed that actual fraud is defined as follows: When a party intentionally or by design misrepresents a material fact or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage over him, there is a fraud."

We find nothing wrong with this instruction. It is a definition of fraud, and is quite different from the nine elements necessary to prove fraud which were stated earlier in the instructions. We find the instruction in question to be neither confusing, prejudicial, nor repetitious. It is simply a definition of fraud; it is not intended to supplant the criteria necessary to prove fraud.

Defendant also argues that two of plaintiff's damage instructions given to the jury were repetitious because defendant's damage instruction was read to the jury earlier in the instructions.

The case of Bean v. Gorby, 80 Ariz. 25, 292 P.2d 199 (1956) stands for the proposition that lengthy, repetitious, and argumentative instructions may constitute error if they seem to express to the jury the judge's personal view. While we agree that there may be some overlap as to the plaintiff's and defendant's instructions, we find them neither lengthy, argumentative, nor unduly repetitious. We are unable to see that plaintiff has been prejudiced by these instructions.

Judgment affirmed.

STEVENS, P. J., and ROGER G. STRAND, Superior Court Judge, concur.

NOTE: JAMES DUKE CAMERON was a member of Department A, Division One of the Court of Appeals at the time this cause was argued. He requested that he be relieved from consideration of this matter and ROGER G. STRAND, Judge of the Superior Court, was called to sit in his stead and participate in the determination of this decision.