514 P.2d 253

Gerald HUBBARD and Rita Hubbard, husband and wife, Appellants,

v.

AMERICAN ALLIANCE LIFE INSURANCE COMPANY, an Arizona corporation; Arthur Herzberg; Gerald Barnes; American Assurance and Associates, an Arizona corporation; Security National Life Insurance Company, a Utah corporation; and Seymour N. Tash, Appellees.

No. 1 CA–CIV 1907.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 25, 1973.

Review Denied Jan. 15, 1974.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellants.

Cox & Cox by Alfred S. Cox, Phoenix, for appellees American Alliance Life Ins. Co. and Security National Life Ins. Co.

Berry & Herrick, P. A. by Richard S. Berry, Tempe, for appellees Herzberg, Barnes, American Assurance and Associates & Tash.

## OPINION

JACOBSON, Chief Judge of Division One.

This appeal raises the issue of whether there exists a genuine issue of material fact which would preclude the granting of a motion for summary judgment against plaintiffs on their complaint alleging fraud in connection with the sale by plaintiffs to defendant American Alliance Life Insurance Company of certainn real property.

Plaintiffs-appellants Gerald Hubbard and Rita Hubbard brought an action against the defendants' appellees, American Alliance Life Insurance Company (American), Arthur Herzberg, Gerald Barnes, and Seymour N. Tash, former employees of American, and Security Life Insurance Company, successor in interest of American. Plaintiffs' complaint alleged that they were induced to transfer the real property involved to American, based upon four false representations: (1) that plaintiffs would receive shares of Class B stock in the defendant American Alliance Life Insurance Co., having a value of $21,000.-00; (2) that they would receive the sum of $101.25 per month for as long as they or their successors in interest owned the stock; (3) that the defendant's Class B stock would be marketable in the "over-the-counter" market on January 1, 1968, and that it would have a reasonable value in that market of $6.50 per share; and (4) that the transaction would result in a tax-free exchange to plaintiffs.

After depositions of all the principals to the transaction were taken, defendants collectively moved for summary judgment in their favor, which the trial court granted, apparently on the basis that the representations made would not support an action in fraud or that the plaintiffs had any right to rely thereon. Plaintiffs have appealed the judgment entered in defendants' favor.

Taking the plaintiffs' depositional testimony in a light most favorable to them it appears that the plaintiffs were an elderly couple who owned certain non-income producing property in Phoenix, Arizona. Prior to their dealings with defendant American, the plaintiffs had received at least two offers to purchase their property for about $18,000.00, but had refused, believing them to be insufficient. Defendant Barnes estimated that the property had a value of $25,000 at the time the purchase was consummated.

It appears that defendant Herzberg was acquainted with the plaintiffs through prior insurance dealing and had previously sold the plaintiffs 150 shares of American stock.

In 1967 defendants Herzberg and Barnes went to plaintiffs' home in connection with policies held by the plaintiffs and in the course of conversation indicated that American had allocated a certain amount of stock for the acquisition of real property for the purpose of constructing a building. Plaintiff Rita Hubbard jokingly suggested that defendants buy their property. Barnes and Herzberg said that they would look into it.

Several days later Barnes and Herzberg, after apparently conferring with the officers of American, returned to plaintiffs' home to discuss the purchase of the real property in question. At this time, according to plaintiffs, Herzberg and Barnes agreed on behalf of American that the property would be purchased for $21,000.00

worth of stock in addition to assuming a $1,500.00 mortgage. Also Barnes and Herzberg told plaintiffs that the entire transaction would be tax free; that the American Alliance stock would be "over-the-counter" stock on January 1, 1968; and that plaintiffs or their successor in interest would receive the sum of $101.25 per month as long as they held the stock. Barnes and Herzberg then gave the plaintiffs a "receipt" which stated that plaintiffs had given to defendants a check for $13,500.00 for the purchase of shares of American. Plaintiff Rita Hubbard did not understand what this was and stated she hadn't given them a check for that amount and that at any rate the $13,500.00 wasn't the correct sum. The number of shares to be purchased was left blank. (After this meeting, it was filled in at 2250 shares.) When Rita objected to this receipt, defendants stated, "Well, we'll fix it up." They represented that the "receipt" was a mere form.

After delivery of the deed by plaintiffs and the subsequent receipt by them of shares of stock, Barnes and Herzberg returned a week or so later and told plaintiffs that their secretary had made a mistake and had issued to plaintiffs more shares than they were supposed to get. Defendants told them that their signatures were needed in order to void the extra stock shares which had been erroneously issued to them, the inference being that defendants Barnes and Herzberg had originally delivered to the plaintiffs the correct number of shares necessary to meet the purchase price of $21,000 (3500 shares) and used the device of the secretarial mistake to obtain back some of these shares. Plaintiffs were then asked to and did sign six stock certificates in blank.

Plaintiffs at this time had not computed the number of shares necessary to equal their selling price but trusted that defendants had given them the correct amount and therefore did not discover until a year later that in fact 3500 shares should have been received.

Contrary to plaintiffs' testimony as to the negotiations surrounding the sale of the property, both defendant Barnes and Herzberg testified by way of deposition, that the purchase price of the property was to be $15,000, American to assume a $1,500 mortgage and plaintiffs were to receive stock in American equal to $13,000 (2250 shares).

In support of plaintiffs' contention that they were to receive 3500 shares of stock, they point to American's petition to the Arizona Corporation Commission which stated that the property was being acquired "in exchange for petitioner assuming the mortgage of approximately $1,500 and 3500 shares of Class B stock, par value of $1.-00," and also to a prospectus of American Alliance which stated,

> "In September, 1967 the Company acquired a lot on 12th Street in Phoenix, Arizona, just south of Camelback Road [the property in question.] The Company assumed the mortgage of $1,500 and gave 3,500 shares of stock in exchange for the property."

As to the difference between the 2,250 shares actually received and the 3,500 bargained for, Barnes in his deposition indicated that quite possibly he had received the difference of 1,250 shares as a "commission."

As to the $101.25 per month which plaintiffs alleged was to have been paid to them as long as they held the stock, the first payment was not made until March of 1968, and only a total of twelve payments was ever made. These payments were made on checks paid by the defendant American Assurance and Associates (American Assurance) of which Herzberg was president and Barnes was vice-president. American Assurance was a corporation owned by Barnes and Herzberg. Plaintiff Rita Hubbard indicated that defendants Barnes and Herzberg represented that the entire transaction would be tax-free to plaintiffs and that she considered this tax-free status part of the deal.

Plaintiffs subsequently had to pay income tax on the exchange. The stock never became negotiable "over-the-counter", and American Alliance subsequently merged into Security National.

Approximately one year after all of these transactions between the parties, the plaintiff executed a release to American, which on its face would appear to exonerate all the defendants from further liability to plaintiffs. However, all the principals to the signing of this release testified it dealt with a release of liability on actions unrelated to the sale of the real property involved and was so understood by all parties.

Defendants American, Barnes, Herzberg, Tash, and American Assurance, first contend that plaintiffs failed to controvert their affidavits and depositional testimony that in fact the purchase price of the property was the transfer of 2,250 shares of American and thus no factual basis appears for an action for fraud based on the misrepresentation of the amount of stock plaintiffs were to receive. We disagree.

■ From the deposition testimony previously set forth it is apparent that a factual dispute exists as to whether the purchase price was $21,000 (representing 3,500 shares) or $13,500 (representing 2,250 shares), whether plaintiffs were fraudulently induced to execute a deed and a receipt for less than their testified to purchase price and whether they were induced by fraudulent misrepresentations to transfer back to Barnes and Herzberg shares of stock which they were entitled to. Whether the plaintiffs relied on these alleged misrepresentations or whether they had the right to rely thereon are proper jury questions, but the existence of these jury questions precludes the granting of summary judgment as to defendants American, Barnes and Herzberg. Pacific Gas & Electric Co. v. Almanzo, 22 Ariz. 431, 198 P. 457 (1921); Mobil Oil v. Frisbie, 14 Ariz.App. 557, 485 P.2d 280 (1971).

However, as to defendants Tash and American Assurance we agree that there was no evidence presented by plaintiffs which indicates that these defendants participated in the alleged fraudulent conduct which induced plaintiffs to part with their real property.

■ Defendant Security National contends that the offer of 3,500 shares of stock was a promise to act in the future and is not a fraudulent representation. Again, we disagree. There is sufficient evidence to indicate that plaintiffs were induced to believe that they were presently receiving the equivalent of $21,000.00 · in Class B stock when in fact they were not. This was not some act to be performed in the future, but rather a present misrepresentation that plaintiffs were receiving the correct amount of stock as the purchase price.

We need not determine, since a reversal of this matter must occur, whether the remaining allegations of fraudulent conduct on the part of the defendants would, in and of themselves, support an action in fraud. We merely point out, as stated in Waddell v. White, 56 Ariz. 420, 431, 108 P.2d 565, 570 (1940):

"We think that the complaint should. be considered as a whole and that thus considered it presented a picture to the jury which, if true, legally sustained a verdict for plaintiff. Many of the thirty-four specific allegations, it is true, are not of themselves fraudulent representations of a nature which, standing alone, would sustain a verdict, but all of them were admissible in evidence for the purpose of showing that defendant was not in good faith offering a plan which he intended to or believed he could carry to successful fruition, but that he was endeavoring in every possible manner, and by means of every kind of statement of fact or opinion and promise to induce plaintiff to enter into a joint adventure which he had proposed for the purpose of ultimately defrauding the latter."

Nor do we determine, since the issue is not raised on appeal, whether recission is a

proper remedy in this action in view of the subsequent developments on the property.

Insofar as defendants American, Barnes, Herzberg and Security National, the judgment of the trial court is reversed and the matter remanded for further proceedings; as to defendants American Assurance and Tash, the judgment is affirmed.

Affirmed in part; reversed in part.

EUBANK, P. J., and HAIRE, J., concur.